**WEST TEXAS UTILITIES CO. v. SMITH, Mayor, et al.**

No. 9303.

Court of Civil Appeals of Texas. Austin.

Feb. 3, 1943.

Rehearing Denied Feb. 24, 1943.

Doss & Overshiner, of Abilene, for appellant.

Scarborough, Yates & Scarborough, of Abilene, for appellees.

McCLENDON, Chief Justice.

Appeal from an interlocutory order refusing a temporary injunction. The suit was by the Utilities (West Texas Utilities Company) against the City (City of Winters), its mayor and other officials, and the Universal (Universal Electric Construction Company of Albama, Inc.) to declare illegal a contract between the City and Universal under which Universal was to erect for the City a plant for the generation and distribution of electric current in the city; to enjoin carrying out the contract and construction of the plant and distributing system; to enjoin the City from operating the plant; to require Universal to return forthwith to the City revenue bonds which the City had issued and delivered to Universal under the contract; and to enjoin the City from paying the bonds or interest thereon. The asserted illegality in the contract and bonds consisted in various alleged irregularities in connection with the contract and bonds and in connection with the election under which the bonds were authorized. Utilities' right to question the validity of the bonds and contract is challenged; such right being predicated (1) upon that of a city taxpayer, and (2) upon that of a competitor, it being the owner of a distributing plant legally operating in the City. Temporary injunction was denied after notice and hearing, and Utilities has appealed.

Since we are holding that Utilities has no justiciable interest in the subject matter in issue, which would authorize it to maintain the suit, it will not be necessary to consider the merits of the asserted claims of irregularity in the election, or in the execution of the bonds and contract, nor to detail such irregularities.

The City owned no electric plant or distributing system of any character, and the contract and bonds were the means by which it was to acquire a plant and system. No funds of the City were to be used in connection with the acquisition or operation of the plant, and the bonds (known as revenue bonds issued under Art. 1111 et seq., Vernon's Ann.Civ.St.) were secured only by mortgage on the plant to be erected,

the revenue therefrom and franchise to operate it. Otherwise the bonds were not an obligation or charge against the City, its property or revenues.

■ That a taxpayer of the City does not have a litigable interest in the subject matter which would authorize him to maintain a suit to enjoin execution or enforcement of contract or bonds of this character was held in Fisher v. City of Bartlett, Tex. Civ. App., 76 S.W.2d 535, error dismissed; Id., Tex.Civ.App., 88 S.W.2d 1068, error dismissed. This was the only point decided in the two appeals; and the decision was later expressly approved in Hazelwood v. City of Cooper, Tex.Civ. App., 87 S.W.2d 776, error refused. Authorities on the subject are reviewed at some length in Powell v. City of Baird, 132 S.W. 2d 464 (opinion by Judge Grissom of the Eastland court).

■ Equally well settled is the proposition that Utilities as a competitor has no justiciable interest in the subject matter essential to its right to maintain the suit. It is not contended that Utilities had an exclusive franchise to conduct its business in the City. The City was without power to grant such exclusive franchise, even had it attempted to do so. City of Brenham v. Brenham Water Co., 67 Tex. 542, 4 S.W. 143. Nor is it contended (nor could it be) that the City could not lawfully acquire a plant and engage in competition with Utilities. The gist of Utilities' complaint is that the means, method, or procedure by which the City acquired the plant or the funds (execution of bonds) for its acquisition were illegal,—that is, not in accordance with statutory requirements. That a competitor, as such, is not in position to urge these issues seems quite well established. Among leading authorities upon this point are: Tennessee Electric Power Co. v. Tennessee Valley Authority, 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543; Alabama Power Co. v. Ickes, 302 U.S. 464, 58 S. Ct. 300, 82 L.Ed. 374; New Orleans, M. & T. R. Co. v. Ellerman, 105 U.S. 166, 26 L.Ed. 1015. In the T. V. A. case it was held that electrical utility corporations, not having exclusive franchises, could not assail the validity of provisions of the Act of Congress which authorized supplying electric energy in competition with the complaining corporations. In answer to the challenge of constitutionality of the statutory grant of power, the exercise of which resulted in competition, the court said [306 U.S. 118, 59 S.Ct. 370, 83 L.Ed. 543]:

"This is but to say that if the commodity [here the plant] used by a competitor was not lawfully obtained by it the corporation with which it competes may render it liable in damages or enjoin it from further competition because of the illegal derivation of that which it sells. If the thesis were sound, appellants could enjoin a competing corporation or agency on the ground that its injurious competition is ultra vires, that there is a defect in the grant of powers to it, or that the means of competition were acquired by some violation of the Constitution. The contention is foreclosed by prior decisions that the damage consequent on competition, otherwise lawful, is in such circumstances damnum absque injuria, and will not support a cause of action or a right to sue."

An analogous situation was presented in the recent case of English v. Landa Motor Lines, Tex.Civ.App., 166 S.W.2d 721, error refused, in which it was held that a motor carrier could not challenge the right of a competing corporation to a certificate of convenience and necessity on the ground that its right to engage in the business was ultra vires its corporate powers. Other supporting decisions are given in the cited cases. See also generally upon the subject 11 Am.Jur., p. 748 et seq. § 111; 23 Id. p. 638, § 178, and p. 369, § 182; 39 Id. p. 859, § 10; and annotation in 114 A.L.R. p. 192 et seq. An all fours factual case to that at bar is Arkansas La. Gas Co. v. City of Texarkana, 100 F.2d 652, by the Fifth Circuit Court of Appeals (opinion by Circuit Judge Hutcheson); the holding being:

"A gas company operating distribution system in city had no justiciable interest or right which would be infringed or invaded by city's construction and operation of municipal gas system in competition with such company, and hence could not question city's power to construct and maintain such system by issuing revenue bonds."

Utilities relies upon that line of cases which support the right of one holding a valid license or certificate of convenience and necessity to engage in a business to challenge the validity of a like license or

certificate of a competitor, illustrated in the case of Frost v. Corporation Commission of Oklahoma, 278 U.S. 515, 49 S.Ct. 235, 73 L.Ed. 483. That line of cases is distinguished from the case at bar in the Texarkana and Ickes cases, above. The holding in the latter is embodied in the following quotation:

"What petitioner anticipates, we emphasize, is damage to something it does not possess — namely, a right to be immune from lawful municipal competition. No other claim of right is involved. It is, in principle, as though an unauthorized loan were about to be made to enable the borrower to purchase a piece of property in respect of which he had a right, equally with a prospective complainant, to become the buyer. While the loan might frustrate complainant's hopes of a profitable investment, it would not violate any legal right; and he would have no standing to ask the aid of a court to stop the loan. What difference, in real substance, is there between the case supposed and the one in hand?

"The ultimate question which, therefore, emerges is one of great breadth. Can any one who will suffer injurious consequences from the lawful use of money about to be unlawfully loaned maintain a suit to enjoin the loan? An affirmative answer would produce novel and startling results. And that question suggests another: Should the loan be consummated, may such a one sue for damages? If so, upon what ground may he sue either the person making the loan or the person receiving it? Considered apart, the lender owes the sufferer no enforceable duty to refrain from making the unauthorized loan; and the borrower owes him no obligation to refrain from using the proceeds in any lawful way the borrower may choose. If such a suit can be maintained, similar suits by innumerable persons are likewise admissible to determine whether money is being loaned without lawful authority for uses, which, although hurtful to the complainants, are perfectly lawful. The supposition opens a vista of litigation hitherto unrevealed." [302 U.S. 464, 58 S.Ct. 304, 82 L.Ed. 374.]

The same distinction is implicit in the English case, above, where it was held that the complaining motor carrier could not question the power of a competing carrier under its charter to engage in the business, although it had the statutory right to challenge the validity of the order granting the certificate to the competitor.

The order appealed from is affirmed.

Affirmed.