CITY OF EL PASO v. EL PASO CITY LINES, Inc.

No. 4664.

Court of Civil Appeals of Texas. El Paso.
Nov. 23, 1949.

Rehearing Denied Dec. 21, 1949.

Ernest Guinn, County Attorney, El Paso, Travis White, City Attorney, El Paso, for appellant.

Kemp, Smith, Brown, Goggin & White, El Paso, for appellee.

PRICE, Chief Justice.

This is an appeal from a judgment of the District Court of El Paso County, 34th Judicial District. Plaintiff, the El Paso City Lines, Inc., hereinafter referred to as plaintiff, sought a declaratory judgment declaring a certain ordinance void or inapplicable to it. The defendant, City of El Paso, joined in a prayer for a declaratory judgment as to the validity of the ordinance and sought by cross-action to recover by virtue of the terms of the. ordinance the· sum of $211,586.77, same alleged to be the earnings of plaintiff over and above 6% on its investment. These earnings were for the year. 1946, $123,947.04, and for the year 1947, $87,639.73. The judgment was based on the pleadings and admissions and agreements made in pursuance of a pre-trial proceeding. It enjoined the city from any attempt to enforce the ordinance against the plaintiff and denied defendant any recovery on its cross-action. Although it is not in chronological order of the events pertaining and relating to this litigation, it is deemed not inappropriate to set forth the ordinance in question in haec verba.

"Section 1. That from and after this date, no public utility operating within the city limits of the City of El Paso shall be entitled to retain for its own use any sums hereafter charged and collected in excess of a fair return upon its investment.

"Section 2. That from and after this date, all sums collected by a public utility operating within the city limits of El Paso, in excess of a fair return upon its investment shall be held in trust by said utility for the City of El Paso. The City of El Paso, after receiving said trust fund from said utility, shall distribute same to the customers paying said excess charges, and for such purpose it shall be the duty of the utility to furnish the City a complete list of said customers and the amount of refund each is entitled to.

"Section 3. That for the purpose of this ordinance, a fair return upon the investment of a public utility is hereby declared to be six per cent (6%) per annum. The City Counsel shall have the power, by ordinance, to either increase or decrease the percentage fixed whenever, in its opinion, the circumstances warrant such change. If in any suit by the City to recover excess earnings under the provisions of this ordinance, it is held that a return of six per cent (6%) is not sufficient to constitute a fair return, the utility in said suit shall be entitled to retain whatever sum is determined to be a fair return, but shall account for and hold in trust, as provided in this ordinance, all sums received over and above that amount.

"Section 4. Rates heretofore fixed by franchise, contract, ordinance, or otherwise for a utility subject to this ordinance, shall continue to serve as a basis for charges to be made by said utility; however, the charging and collecting of such rates shall not confer any right upon the utility to retain for its own use all of said charges so received, it being hereby declared that all earnings by said utility in excess of a fair return upon its investment shall be deemed to be received and retained in trust for the City of El Paso, which shall receive said trust funds from said utility for the purpose of distributing same to the customers paying said excess charges.

"Section 5. Rates hereafter fixed by franchise, contract, ordinance, or otherwise, for a utility subject to this ordinance shall serve merely as a basis for charge for service rendered, and the charging and col-

lecting of such rates shall not confer any right upon the utility to retain for its own use all of said charges so received, but it may retain for its own use only so much thereof as to allow it a fair return on its investment, and any part of said charge made and collected which shall be found to be in excess of a fair return on the investment of said utility shall be deemed to be held in trust as provided herein.

"Section 6. The City Council shall determine the valuation of the investment of each utility for the purpose of this ordinance, subject to the right of the utility to seek a review of such valuation by the Courts. Valuations by the City Council to determine whether the rate charges have been and are excessive and the amount of excess funds held in trust, if any need not be made every year, but shall be made at such times as the City Council may deem necessary; provided, however, when the City Council fixes valuations, the valuations shall cover yearly periods and each time the City Council fixes valuations to determine whether the rates charged have been excessive and what excess earnings, if any, a utility holds in trust, it shall fix the valuation of the properties forming the investment to cover each year from the date of the last valuations, and the City Council shall determine at that time, and declare, the amount of earnings, if any, collected each year over said period of time in excess of a fair return on its investment by said utility. Earnings in excess of a fair return for any one year shall be received and held in trust by the utilities as provided herein. After said amount of excess earnings have been determined, demand may be made for said sums, and if payment is not made, suit may be thereafter instituted in any court of competent jurisdiction in the name of the City for an accounting for said trust funds; provided, however, that nothing herein shall be construed as seeking in any wise to preclude the courts from passing upon the question of value of the investment of the utility or the fair return thereon or any question subject to judicial review and inquiry, or of depriving the utility of any right to judicial review and inquiry on any question guaranteed by law. It is further

provided that in the event any other body is, or may be hereafter, authorized by law to determine the value of the properties or a fair return thereon or both, for any utility subject to the terms of this ordinance, said value and return so fixed by said body shall control in determining the value of the properties and determining whether or not a utility has received and holds in trust excess earnings.

"The first valuation of a utility's properties made after the passage of this ordinance shall cover, with separate valuations for each year included, the time from the date of this ordinance until the time the valuation is made, and thereafter the succeeding valuations that may be made, shall cover, with separate valuations for each year involved, the period of time elapsing from the date of the last valuation.

"Section 7. The setting aside by a court of competent jurisdiction, for any reason, of the amount or percentage allowed as a fair return or of the valuation of properties made by the City Council or by any other body designated by law for such purpose in a suit for excess earnings, shall in no wise release a utility of the duty to continue to hold in trust all sum— collected in excess of what may finally be fixed and held as a fair return on its investment during the time covered by said valuation and involved in said suit, but to the contrary, said utility shall continue to hold all excess earnings in trust for the City of El Paso as provided herein until the valuation of the investment and a fair return thereon is finally fixed and determined, and the earnings in excess of a fair return definite and known.

"Section 8. This ordinance shall not be held to apply to any public utility which by law is not subject to regulation by the City Council of the City of El Paso.

"Section 9. The City Council of the City of El. Paso has the power and duty of fixing rates and regulating for the public interest, public utilities operating within its city limits. Under the laws of the land public utilities are not entitled to more than a fair return upon their investment and the utilities have all facts and data

necessary at all times to know what charges will bring a fair return. It is the desire of the City Council of the City of El Paso to provide regulations for public utilities subject to its regulations to prevent said utilities from retaining more than a fair return upon their investments. Under the present regulations it is possible for a utility to charge and collect excessive rates and retain earnings in excess of a fair return from one rate-making period to another and it is because of this that public utilities are prone to engage in long litigation when rate controversies arise and hold the threat of such litigation over the public in fixing rates, since the City does not have available at all times data necessary to know valuations, etc. It is therefore the intention and purpose of the City Council of the City of El Paso by this ordinance to permit the public utilities to retain for their own use and benefit only such charges made and collected which do not exceed a fair return upon their investment, and to made the utilities trustees of all earnings made in excess of a fair return, said earnings to be held in trust for the City of El Paso, which is to distribute such excess earnings to the customers paying same. It is the intention of the City Council that every word, sentence, phrase, clause, paragraph, provision and section of this ordinance shall be construed in such a manner as to accomplish such purpose.

"Section 10. If any section, sub-section, paragraph, provision, sentence, clause or phrase of this ordinance is for any reason held to be invalid, or held inapplicable to any particular utility, such decision shall not affect the validity of the remaining portions of said ordinance or its validity and application to the remaining public utilities in the City of El Paso; the City Council of the City of El Paso, Texas, hereby declaring that it would have passed said ordinance and each section, sub-section, paragraph, provision, sentence, clause or phrase thereof irrespective of the fact that any one or more of the sections, sub-section-, paragraphs, provisions, sentences, clauses or phrases thereof be declared unconstitutional and would have passed said ordinance and made same applicable to every public utility within the city limits of the City of El Paso that said ordinance could apply to, irrespective of whether said ordinance could be made applicable to other public utilities within the city limits of the City of El Paso, it being the intention of the City Council to have this ordinance apply to every public utility that it may validly apply to.

"Section 11. The fact that there is no sufficient law at the present time regulating public utilities as provided in the foregoing ordinance, and the further fact that it is of great importance to the public that said regulations become effective immediately, creates a great public emergency, necessitating the suspension of the rule requiring an ordinance to be read in open meetings of the City Council at two regular meetings, and by unanimous vote of the Aldermen present, and with the consent of the Mayor, said rule is hereby suspended, and this ordinance shall take effect immediately upon its passage, approval and publication.

"Passed and approved, this 6th day of April, A.D. 1939.

"M. A. Harlan,
Mayor

"Attest:
"W. R. Collins,
City Clerk.

"A true copy I do here certify.
"W. R. Collins,
City Clerk."

It appears from the record that the plaintiff since some time during the year 1943 has operated busses and street cars in the City of El Paso for transporting passengers for hire. Its operations are not solely confined to the City of El Paso; it operates busses within the city of El Paso and to points in its surburbs and further operates a street railway from the City of El Paso across the Rio Grande over what is known as the International Bridge, to the City of Juarez, Mexico. In 1943 the plaintiff lawfully succeeded to all of the franchises, rights, titles and properties, real and personal, of the El Paso Electric Railway Company. Said El Paso Electric Railway

Company had for a long time prior to said date operated in the City of El Paso a motor bus system and electric street railways for the transportation of passengers. By an ordinance adopted in 1920 the fare for transportation of passengers over the lines of the El Paso Electric Company was fixed at 6¢ for adults and half fare or 3¢ for school children, and said fare has at all times been in force and effect since the date of said ordinance, except perhaps in case of certain instances relating to bus line fares beyond the city limits. The City of El Paso adopted the Home Rule Amendment of the State Constitution, Vernon's Ann.St.Const. art. 11, § 5, its powers to regulate rates of course are derived from the State. Section 12 of Article 1175, which enumerates the powers of Home Rule cities, provides in part as follows: "To determine, fix and regulate the charges, fares or rates of any person, firm or corporation in enjoying or that may enjoy the franchise or exercising any other public privilege in said city and to prescribe the kind of service to be furnished by such person, firm or corporation, and the manner in which it shall be rendered, and from time to time alter or change such rules, regulations and compensations."

Article 1175, Section 20, V.A.C.S., provides: "To license, operate and control the operation of all character of vehicles using the public streets, including motorcycles, automobiles or like vehicles, and to prescribe the speed of the same, the qualification of the operator of the same, and the lighting of the same by night and to provide for the giving bond or other security for the operation of same."

 The power of the City to regulate rates is ambulatory. In the event it has regulated a rate and it is necessary to change same to make same alike reasonable to the customer and to the utility, it may do so. Sec. 17 of Art. 1 of our Constitution, Vernon's Ann.St., provides in part as follows: "No irrevocable or uncontrollable grant of special privileges or immunities, shall be made; and all privileges and franchises granted by the Legislature, or created under its authority shall be subject to the control thereof." See also City of

Houston v. Southwestern Bell Tel. Co., 259 U.S. 318, 42 S.Ct. 486, 66 L.Ed. 961. The power of the City to change the rates at any time to render same reasonable is not questioned by either the plaintiff or defendant. The power to fix the rate does not confer upon the city the power, if same be fixed unreasonably high, to appropriate to its own use any sum·realized from the rate beyond a fair return to the corporation. As long as a public utility does not exact a rate from a customer greater than that fixed by the body having the legal power to fix said rates, the customer has no right of reparation against the utility for the excessive charges. Arizona Grocery Co. v. Atchison T. & S. F. R. Co., 284 U.S. 370, 52 S.Ct. 183, 76 L.Ed. 348; Producers' Refining Co. v. Missouri K. & T. Ry. Co., Tex.Com.App., 13 S.W.2d 679.

Under the terms of this ordinance there purports to be created a right in the customer. Further, it is thought to be elementary that if the City has authorized the collection of unreasonable rates she has no right of recapture. What the city seeks to recover here is the proceeds of a rate which it authorized the plaintiff to charge, which at any time it had the power and duty to change if same was unreasonable and resulted in more than a reasonable return to the utility, and which likewise it had the power and duty to change if it did not result in a fair return to the utility. It does not appear that even though the rate produced more than a reasonable return that the city had any title to the excess, any title either legal or equitable. The City says here it does not insist on the provision in the ordinance that the plaintiff should furnish it a complete list of customers and the amount of refund each is entitled to. The provision that the City of·El Paso should hold same in trust for those from whom excessive charges have been exacted is the only element of justice in this portion of the ordinance. The City has no semblance of moral or legal right to these funds in a proprietary capacity. Appellant fails to point out where there has been power delegated to the City to impose a duty on the plaintiff to keep an account of all its passengers and the

amount due each. This would indeed be an impractical and unreasonable requirement. In effect it would create the City a Trustee for an unlimited number of persons whose identity as a practical matter it would be impossible to establish. In practical effect, if the utility did pay the money over to the City, the City would acquire title thereto. It may be that the idea of the utility holding in trust funds was derived from the case of Dayton-Goose Creek R. Co. v. United States, 263 U.S. 456, 44 S.Ct. 169, 68 L.Ed. 388, 33 A.L.R. 472. It is to be noted that there there was no indefiniteness as to the beneficiaries of the trust, as there is here, hence there could be no difficulty in distributing the fund. In that case it was an Act of Congress, endowed with the power by the Constitution. See Sec. 8; Art. 1 of the Federal Constitution which provides that "The Congress shall have power to * * * regulate commerce with foreign nations, and among the several states, and with the Indian tribes." It is elementary and fundamental that the power delegated to Congress over commerce is full and plenary. Its power is far greater than merely to regulate the rates that such carriers shall charge. It has been held that under this power where State rates are discriminatory as to Interstate Commerce, that it may regulate intrastate rates. Gibbons v. Ogden, 9 Wheat. 1, 6 L.Ed. 23; Dayton-Goose Creek R. Co. v. United States, supra; Railroad Commission of Wisconsin v. Chicago, B. & Q. R. Co., 257 U.S. 563, 42 S.Ct. 232, 66 L.Ed. 381, 22 A.L.R. 1086.

It must be that implicit in the law of the State delegating the power to regulate rates, that the rates fixed should be certain and definite, to constitute a valid exercise of the power conferred. 62 C.J.S., Municipal Corporations, § 292, p. 650, citing San Francisco Pioneer Woolen Factory v. Brickwedel, 60 Cal. 166. The ordinance in question, if it be a rate ordinance, fails in this respect. It will be noted that the ordinance fixes a fair return at 6% per annum, but retains the power to increase or decrease the percentage fixed as such. There is further uncertainty in the ordinance in that it further provides: "If in

any suit by the City to recover excess earnings under the provisions of this ordinance, it is held that a return of six per cent (6%) is not sufficient to constitute a fair return, the utility in said suit shall be entitled to retain whatever sum is determined to be a fair return, but shall account for and hold in trust, as provided in this ordinance, all sums received over and above that amount." In the contingency provided for the court fixes the rate. If we construe the ordinance as a rate-fixing ordinance in connection with the ordinance passed in 1920, it amounts to this—that in the last analysis what the utility may finally retain as its property is a reasonable return on its investment. The utility is perhaps not required to exact the 6¢ fare fixed by the ordinance of 1920. In effect it amounts to this, that if you fix a fare not exceeding the 6¢ maximum allowed by the ordinance, you are not allowed to retain the fare fixed if you realize more than 6% on the investment. The operation of the rate is retrospective rather than prospective. The rate is not fixed by the ordinance authorizing them to collect the 6¢ fare, but by the ordinance of 1939 is made tentative and conditional—made tentative and conditional by the branch of the State having a continuing power to fix rates to the end that same be fair alike to the utility and to the customers. It is only on the theory that the rate the utility is authorized by the city to charge is in its operation unfair and unreasonable that those from whom it was exacted are entitled to reparation. If a 6¢ fare was an unreasonable rate, the City had the power to fix a reasonable rate. If this be some sort of an excise or license tax, which neither party contends that it is, the onus thereof would fall on the patrons of the utility, and not on the utility. If it be impracticable for the City to make the reparations, the ordinance contingently provides a profit sharing between the City and company. The City takes everything earned above 6%.

It is true that plaintiff was only legally entitled to a reasonable charge. On the other hand, it was the province of the City to determine what was a reasonable charge. The power to make this determination is

limited by the requirement that it must not fix such a rate as would amount to a confiscation of the utility's property. When a rate is fixed by the State not violative of the power conferred, it is binding on the utility; it is binding on the customer. If the rate fixed be unreasonable as to the customer, the customer may appeal to the City to change the rate. The customer is bound by the action of the City. If the rate is unreasonable as to the utility, the utility may appeal to the Courts on the ground that the rate is confiscatory. Defendant fails to point out where any power is delegated whereby it has the right to require of the plaintiff that it act as a sort of intermediate Trustee, for the purpose of paying it to the City in trust. Appellant likewise fails to show where any power is delegated by the State to it to act as Trustee for the customers of utilities.

 The power lodged in a governmental agency to fix the rate that a utility shall charge the customers does not imply a power in such regulatory body to appropriate to its benefit anything realized beyond a fair return from the rate. While the ordinance in question provides that the City hold the property in trust for those who have paid the excessive rate, this attempted trust is so vague and indefinite that it is impossible of enforcement. For all practical purposes the ordinance might as well have decreed that the City hold it for its own benefit. In the case of Dayton-Goose Creek R. Co. v. United States, 263 U.S. 456, 44 S.Ct. 169, 68 L.Ed. 388, 33 A. L.R. 472, the rates fixed were fair to the shipper, but it was a regional rate; the rates were fixed for a large area, it would enable a particular carrier out of the joint rate to realize more than a fair return. Under the broad plenary power given Congress to regulate Interstate Commerce it was held that the power might be exercised to appropriate the excess to foster and encourage commerce. The City of El Paso is endowed by the State with power to regulate the rates to be charged by utilities. It is not endowed with a plenary power. It is a strictly governmental agency not endowed with the general power to regulate transportation.

 It has been heretofore stated that in Dayton-Goose Creek Ry. Co. v. United States, supra, the rate, although enabling the carrier to realize more than a fair return on its investment, was fair to the shipper. In the instant case if the 6¢ fare was more than sufficient to enable the plaintiff to earn a fair return on its investment, if anyone is entitled to collect that excess from the plaintiff it should be the patrons entitled to collect because in its operation the rate of 6¢ was excessive. By no stretch of the imagination should the City be allowed to collect same for its own benefit. Appellant fails to point out any power of the city by ordinance to create a legal title in itself to this excess, if excess there be. It cannot be successfully contended that the utility had not the legal right to collect the 6¢ fare provided for in the ordinance of 1920. The right to do this is even guaranteed by the assailed ordinance of 1939. As has been hereinbefore stated, in collecting the rates the defendant violated no law. It has been held that inquiry as to justness, reasonableness or discriminatory effect of rate as affects reimbursements constitutes judicial inquiry not within the authority of the authority of the Railroad Commission. Missouri Kansas & T. R. Co. of Texas v. Railway Commission, Tex.Civ. App., 3 S.W.2d 489; Producers Refining Co. v. Missouri K. & T. Ry. Co., Tex.Com.App., 13 S.W.2d 679, 680. It is elementary that the power to regulate rates is vested in the State and is not one of the inherent powers of a city, and such power must be strictly construed. The power to order reparations is, in our opinion, neither directly nor indirectly expressly granted to the city. See Texas-Louisiana Power Co. v. City of Farmersville, Tex. Com.App., 67 S.W.2d 235; Coleman Gas & Oil Co. v. Santa Anna Gas Co., Tex.Com. App., 67 S.W.2d 241.

 Section 41 of the El Paso City Charter of 1907 in substance authorizes the fixing of rates by the City, provided such rates be reasonable and be fixed after giving such company an opportunity to be heard, and shall not be a confiscation of the property of such company. Heretofore has been quoted Sec. 12 of Art. 1175

which authorizes Home Rule cities to determine, fix and regulate the charges, fares or rates of public service companies. There is no inconsistency between the provision of the charter and the provision of the statute. In the case of Foster v. City of Waco, 113 Tex. 352, 255 S.W. 1104, 1105, it is said: "It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident, to the powers expressly granted; third, those essential to the accomplishment of the declared objects and purposes of the corporation—not simply convenient, but indispensable. Any fair, reasonable, substantial doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied. Of every municipal corporation the charter or statute by which it is created is its organic act. Neither the corporation nor its officers can do any act, or make any contract, or incur any liability, not authorized thereby, or by some legislative act applicable thereto. All acts beyond the scope of the powers granted are void." See also Southwestern Telegraph & Telephone Co. v. City of Dallas, 104 Tex. 114, 134 S.W. 321; Payne v. Mussey, 145 Tex. 237, 196 S.W.2d 493. If a rate be fixed by a body having the power to fix such rates, it is presumed to be reasonable, and its collection cannot be held to have been unlawful, and reparations cannot be decreed. See Eagle Cotton Oil Co. v. Southern Ry. Co., D.C., 46 F.2d 1006, and authorities there cited.

This case was reversed in 5 Cir., 51 F.2d 443, because it was held that the rate in that case had not been established by the Interstate Commerce Commission. The case cites a number of precedents pertinent and applicable here.

In our opinion it is beyond the power of a Texas city operating under a Home Rule Charter to pass an ordinance that if rates fixed by such city return more than a reasonable profit that reparation shall be made to it either in its proprietary capacity or in the capacity of a trustee; further, that in the exercise of the power to fix rates such rates must be certain and definite; such rates must operate prospectively rather than retrospectively. It is further our opinion that the ordinance of 1939 as applied to plaintiff is void because same is unreasonable.

We have not passed on the question of the Statute of Limitations because if same is applicable it would not dispose of the entire case.

We hold that the judgment of the trial court was correct, and same is in all things affirmed.