**SAN ANTONIO TRANSIT COMPANY,**
Appellant,

v.

**CITY OF SAN ANTONIO et al., Appellees.**

No. 13414.

Court of Civil Appeals of Texas.
San Antonio.
March 25, 1959.

Lang, Byrd, Cross, Ladon & Oppenheimer, San Antonio, for San Antonio Transit Co.

Carlos C. Cadena, City Atty., San Antonio, Rhyne, Mullin, Connor & Rhyne, Washington, D. C., for City of San Antonio.

W. O. MURRAY, Chief Justice.

The San Antonio Transit Company, hereinafter referred to as the "Company", is the operator of motor busses in the City of San Antonio, hereinafter called the "City", pursuant to an exclusive franchise granted by the City.

In November, 1956, the Company applied to the City for an increase in its rates. Hearings were held before the City Council and the Company's application was considered. Subsequent to these hearings, a settlement was reached between the City and the Company, whereby the Company was granted an increase in rates but not to the extent originally requested. This increase in rates was effected by changing the then existing first fare zone from a six mile square covering the center of the City to a circle extending two and one-half miles in radius with its center at the cupola of the Cathedral of San Fernando in the heart of the City. The new rate ordinance was passed on March 1, 1957, upon the expectation that it would produce an increase in annual revenues.

Subsequent experience with the new rates, however, showed that the increase in annual revenues exceeded the City's expectations in the amount of approximately $110,000. In November, 1957, therefore, the City informed the Company that it would hold a hearing to determine whether the rates resulting from the ordinance passed on March 1, 1957, should be decreased by increasing the radius of the central fare zone ¼ mile, i. e., to a radius of 2¾ miles from the cupola of the Cathedral of San Fernando. Pursuant to that hearing, at which the Company was represented by counsel and presented witnesses, the City Council on December 14, 1957, passed an ordinance extending the central fare zone ¼ mile. This extension would result in farepayers in a limited area being able to ride for a lesser amount, and would result in a decrease in revenue to the Company of approximately $76,000 per year.

On December 27, 1957, the Company filed a complaint in the District Court, 45th Judicial District, seeking a temporary restraining order and temporary and permanent injunctions to prevent the City from enforcing either the March 1, 1957, or December 14, 1957, rate ordinances, or from interfering with the Company in its charging of "fair and reasonable" rates until such time as the City Council should pass a new ordinance setting fair and reasonable rates. The temporary restraining order was granted without notice and was extended by agreement of the parties so that the case could be tried on the issue of the permanent injunction. The trial was held March 17–April 2, 1958, and resulted in a decision which enjoined enforcement of the December 14, 1957, rate ordinance. The court, however, refused to enjoin the March 1, 1957 rate ordinance. Both parties gave notice of appeal and the appeals are now before this Court.

The trial court made and filed findings of fact and conclusions of law. It found in part and in substance as follows: That the fair value of the items of property of the San Antonio Transit Company used and useful in furnishing service to the City of San Antonio is the sum of $5,115,379.

That a reasonable and fair ratio between debt and equity capital for the Company is 15% for debt and 85% for equity, and the reasonable going price of the debt capital on the current market is 5% and the reasonable going price of equity capital on the current market is 9%, giving an overall reasonable rate of return of 8.4%.

That the gross revenues of the Company for the year 1958 under the rate ordinance of the City dated December 14, 1957, would be $4,505,521.

That the reasonable operating expenses of the Company for the year 1958, under the rate ordinance of December 14, 1957, would be $4,185,520.

That the Federal income taxes for the year 1958 payable by the Company if operating under the December 14, 1957, ordinance, would be the sum of $143,067.

That the net operating income of the Company for the year 1958 would be $176,933, which would provide a return of 3.46% upon the fair value of its properties' used and useful in rendering service to the City.

That the revenues provided by the rate ordinance of the City dated December 14, 1957, are unjust and unreasonable and inadequate to provide all expenses and a fair return on the fair value of the property of the Company used and useful in servicing the City.

The court concluded as a matter of law that the ordinance of December 14, 1957, was unconstitutional in that it would deprive the Company of its property without just compensation; that the Company is entitled to a permanent injunction restraining the City from putting the December 14, 1957, ordinance into effect.

The trial court refused to pass upon the validity of the ordinance of the City dated March 1, 1957, because the matter was not properly before the court. In this connection, the court concluded that the letter of December 12, 1957, filed by the Company with the City Council, did not in law or fact constitute an application for an increase in rates, and that the then existing rates prevailing under the rate ordinance of March 3, 1957, not having been placed in this proceeding, the court was without jurisdiction to determine the validity thereof.

We will first consider the appeal by the City. The City contends that the trial court erred in failing to value the property of the Company for rate base purposes "somewhere between" original cost less depreciation of property and reproduction cost new, less adjustment for present age and condition. We overrule this contention. The record does not show that the trial court did not apply the above formula in arriving at the present fair value of the Company's property. There was evidence in the record which would have supported a much higher figure as to the value of the Company's property, if that value had been arrived at solely by considering the reproduction cost new, less adjustment for present age and condition. On the other hand, if the trial court would have considered only the original cost less depreciation of the property it would have arrived at a very much lower figure. Under such circumstances we are unable to say that the court did not place the value of the Company's property for rate base purposes "somewhere between" original cost less depreciation of property and reproduction cost new, less adjustment for present age and condition.

The City also contends that the court erred in finding that a fair ratio between debt and equity capital for the Company would be 15% for debt and 85% for equity capital, resulting in a return of 8.4%. We overrule this contention. The court heard a great deal of evidence upon this matter. There was evidence tending to show that the business carried on by the Company was on the decline and that it was difficult to find capital for investment in equity stock of such Company. That to secure equity capital in the present money market it would be necessary to have a

return of at least 9%, and that to secure money in the same market for debt capital would require at least 5%. The proper ratio between debt and equity capital in a corporation such as the Transit Company is a question of fact to be determined from the testimony of experts, and the evidence given in this case justifies and supports the conclusion arrived at by the trial court. Railroad Commission of Texas v. Houston Natural Gas Corporation, 155 Tex. 502, 289 S.W.2d 559.

■ The City also contends that the annual depreciation on busses belonging to the Company for rate making purposes, should be made on a remaining life method, using a mileage basis or a ten-year life basis. This might be one method of determining such matters, but the method used by the experts who testified for the Company is not shown to be an erroneous one, and it is a method whereby the present fair value of busses might be determined. Railroad Commission of Texas v. Houston Natural Gas Corporation, supra; Simpson v. Shepard, 230 U.S. 352, 33 S.Ct. 729, 57 L.Ed. 1511; Galveston Electric Co. v. City of Galveston, 258 U.S. 388, 42 S.Ct. 351, 66 L.Ed. 678; State of Missouri Ex rel. Southwestern Bell Telephone Co. v. Public Service Commission, 262 U.S. 276, 43 S.Ct. 544, 67 L.Ed. 981; Federal Power Commission v. Hope Natural Gas Company, 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333; General Tel. Co. of the Southwest v. City of Wellington, Tex., 294 S.W.2d 385; City of Houston v. Southwestern Bell Tel. Co., Tex.Civ.App., 263 S.W.2d 169.

■ The City further contends that in any event 3½% of the land and buildings of the Company should be deducted from the rate base to adjust for the utilization of the Transit Company properties and facilities by the Motor Equipment Company. The trial court found that the Motor Equipment Company paid rent for the use of the Company's property and that this money was credited as income by the Company, and therefore it was not necessary to make

the reduction contended for by the City. We see no reason for setting aside this finding of the trial court.

■ The City contends that the Company should not have been allowed to deduct the sum set aside for the payment of income taxes, because the Transit Company in 1957 made a consolidated income tax return with the Southwestern General Insurance Company, and as the insurance company had a large loss the Transit Company did not actually pay the money set aside for income taxes to the Federal Government. This fact alone would not preclude the Transit Company from setting aside the money for the purpose of paying income taxes for the year 1958. The testimony shows that in 1958 the insurance company would not have a loss, and that in all probability the income tax money set aside will be paid to the Federal Government.

■ The City next contends that the trial court should have heard this case under the substantial evidence rule. We do not find it necessary to pass upon this question because the trial court found that whether or not the case was heard under the preponderance of the evidence rule or the substantial evidence rule, that it would have come to the same conclusion, and we think the record justifies this finding.

■ The Transit Company by its appeal presents the contention that the trial court erred in not enjoining the City from keeping in effect its ordinance of March 1, 1957. The ordinance of March 1, 1957, was entered after a rate hearing, and went into effect without either the City or the Company attempting to secure a judicial review by an appeal to the courts. It was apparently satisfactory to all parties until the City decided that it would permit the Transit Company to make too great a profit and served notice upon the Company that it intended to lower the rate in effect by extending the first zone by a radius of ¼ mile. The Company answered and stated that the rate fixed by the March 1, 1957, ordinance was not too high, but was in fact

too low, and that the December 14, 1957, ordinance was void because it was confiscatory in that it would not permit the Company to make a fair return upon a fair value of its property used and useful in the transit business.

A transit company desiring to increase its rates must apply to the City Council for a new rate and must invoke the rate fixing powers of the City before it may resort to the courts. Railroad Commission v. Houston Nat. Gas Corp., 155 Tex. 502, 289 S. W.2d 559; Art. 1175 Vernon's Ann.Civ. Stats.; Thompson v. Texas Mexican Ry. Co., 328 U.S. 134, 66 S.Ct. 937, 90 L.Ed. 1132; Myers v. Bethlehem Shipbuilding Corporation, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638; State ex rel. Scott v. Scearce, Mo.App., 303 S.W.2d 175; General Tel. Co. of the Southwest v. City of Wellington, Tex., 294 S.W.2d 385; City of Baytown v. General Tel. Co. of the Southwest, Tex.Civ. App., 256 S.W.2d 187.

The record justifies the finding of the trial court to the effect that the Company did not exhaust its legal remedies before the City Council before appealing to the courts for an increase in rates.

It is quite possible that with the inflationery period we have been having for some time, that a rate that was proper yesterday may be insufficient today, but before a company can refuse to continue to apply the existing rate it must go before the City Council and seek a new rate, as a prerequisite to going into court and seeking to enjoin the existing rate. The City Council is the proper body in the first instance to set aside an old rate and fix a new one. A company desiring a new rate should ask for a specific higher rate, so that the City may decide whether it will grant such a rate or go to the great expense of employing experts to make a study to determine whether the increased rate is justified. If the increased rate is small the City might grant it rather than go to the expense of contesting it.

 Where a company appears before the City Council only for the purpose of opposing the lowering of its rate, it cannot thereafter go into court and contend that the City should have set aside its old rate and granted a higher rate.

The trial court did not err in refusing to grant the Company an injunction restraining the City from enforcing its rate ordinance of March 1, 1957.

The judgment of the trial court is affirmed.