Herbert M. SCHENKER et al., Appellants,

v.

CITY OF SAN ANTONIO et al., Appellees.

No. 14047.

Court of Civil Appeals of Texas.

San Antonio.

May 15, 1963.

Rehearing Denied June 26, 1963.

Herbert M. Schenker, Jack Davis, Maury Maverick, Jr., Arthur M. Gochman, San Antonio, for appellants.

Carlos C. Cadena, Crawford B. Reeder, City Atty., Matthews, Nowlin, Macfarlane & Barrett, Louis T. Tarver, Jr., Trueheart, McMillan, Russell & Westbrook, San Antonio, Chapman & Cutler, Chicago, Ill., for appellees.

BARROW, Justice.

This suit was instituted in a District Court of Bexar County by Herbert M. Schenker, Marvin C. Beck and John J. Mullen, allegedly as a class action under Rule 42, Texas Rules of Civil Procedure, on behalf of themselves, and for and on behalf of 187,249 consumers of electricity and 161,011 consumers of gas, furnished by the gas and electricity systems owned by the City of San Antonio and operated by the Public Service Board of the City under authority of Arts. 1111–1118, Vernon's Ann. Civ.Stats. Defendants are the City of San Antonio, a Home Rule City, the Public Service Board and the individual members thereof, and the indenture trustees under the indenture agreements by which the system was purchased by the City from the San Antonio Public Service Company in 1942, and refinanced on three subsequent occasions.

The trial court, after a hearing on defendants' plea to the jurisdiction and plea in abatement, entered a final judgment providing in part as follows:

"All parties, Plaintiffs and Defendants, having announced ready on the said pleas to the jurisdiction and in abatement and the Court having considered the pleadings and heard the evidence and arguments of counsel for both Plaintiffs and Defendants and having taken the case under advisement after submission of written briefs, is of the opinion and finds that the relief sought by Plaintiffs as electric and gas consumers relate to the reasonableness of electric and gas rates heretofore charged and to be charged by the City of San Antonio, which are legislative and municipal matters over which the courts have no jurisdiction; and that the record in this case shows that the Defendants, under Article 1113, Revised Civil Statutes [Vernon's Ann.Civ. St. art. 1113], as amended, are authorized to fix the rates charged to these Plaintiffs and that the Defendants have exercised this authority, and therefore Paragraph I of Plaintiffs' First Amended Original Answer and the corresponding plea in the Answer of Defendants Harris Trust and Savings Bank and F. O. Mann, as Trustees, are sustained and this cause should be dismissed with prejudice."

The suit was accordingly dismissed with prejudice.

The various ordinances enacted to authorize purchase in 1942 and setting rates at that time, were introduced in evidence, as were the trust indentures and the City Charter. Plaintiffs alleged substantially that: the City acquired the gas and electricity systems on October 25, 1942, for the sum of $33,950,000.00, which sum was provided by issuance of bonds payable solely out of revenues; an indenture agreement was entered into with the bond holders which provided that the Board of Trustees should have complete authority, power, management and control of the Utility, including setting rates (it is seen that the indentures do not authorize the Board to set rates); that since purchase the City has never fixed, adjusted, or changed any rates; that the City Charter adopted in 1951, calls for the appointment of a "Supervisor of Public Utilities" to furnish information to the City Council, but no supervisor has been appointed and the information has not been furnished; that the City Charter has been violated in the purchase of material without calling for bids; that since October, 1942 (when the ordinance was passed authorizing purchase and setting the rates), no public hearing has ever been held by the City Council to enable the public to analyze the operation, rate structure, rates and charges of the system; that plaintiffs have been required to pay excessive, exorbitant and unreasonable rates, which have substantially increased the value of the utility system to where it is now worth $152,000,000.00; that this surplus is the result of the inequitable and confiscatory policies and actions in not setting fair and reasonable rates as required by law; that said surplus is held in implied and constructive trust for the benefit of plaintiffs, and they ask for refund of the excess accumulated in the four years prior to the filing of suit; that the unreasonable, extortionate and discriminatory rates charged plaintiffs by defendants deprived them of their property without due process of law and are confiscatory and discriminatory; that City has refused to perform its mandatory legislative duty to fix and adjust utility rates; that the rates and charges yielded a net return on fair value of approximately 18% the last four years, and such rates of return were unreasonable, excessive, extortionate, discriminatory and constituted a direct taking of plaintiffs' property without due process of law in violation of United States and Texas Constitutions; furthermore, these excessive rates are a discrimination against consumers in favor of other classes of citizens; that Art. 1113, R.C.S., Vernon's Ann.Civ.St. art. 1113, provides for setting of rates, but in setting rates defendants have included expense items which do not constitute legitimate and legal operating expenses, by transferring excessive sums to the City in lieu of taxes and furnishing free services to City; plaintiffs pray that upon hearing the court set a reasonable and fair maximum net rate of return upon actual fair value of the properties of the system, and prohibit defendants from making illegal payments to the City and from improperly furnishing services to the City, or, in the alternative, that City be required to hold a public hearing for the purpose of establishing reasonable and fair rates.

■ We will not set forth the reasons asserted by defendants that the court lacked jurisdiction, as the rule is clear that where the cause is dismissed it is our duty to search the record and see if there is sufficient reason to sustain such a dismissal. Glen Oaks Utilities, Inc. v. City of Houston, 161 Tex. 417, 340 S.W.2d 783.

It is important to recognize at the outset that this is not a case wherein a consumer complains of discrimination in the charge made against him as compared to the charges made other consumers, Kousal v. Texas Power & Light Co., 142 Tex. 451, 179 S.W.2d 283; it is a complaint, purportedly on behalf of all classes of consumers, that the entire rate structure is

improper in that excessive rates are charged.

■■ It is fundamental that the fixing of rates is a legislative and not a judicial function, and that the only power of the court is to enjoin the enforcement of an illegal rate. It cannot set a rate either for past or future operations. Railroad Commission v. Houston Natural Gas Corp., 155 Tex. 502, 289 S.W.2d 559; Lone Star Gas Co. v. State, 137 Tex. 279, 153 S.W.2d 681; Kousal v. Texas Power & Light Co., supra. This legislative function of rate making has been delegated by the Legislature to the City. Art. 1113 and Art. 1175, § 12, Vernon's Ann.Civ.Stats.

■■ The rule is now equally well established that where a city has refused to perform its statutory duty to fix reasonable rates which will yield a fair return upon the fair value of the property owned by the franchise holder, the Texas Courts will exercise their equity powers to enjoin the enforcement of confiscatory rates. Glen Oaks Utilities, Inc. v. City of Houston, supra; General Telephone Co. v. City of Wellington, 156 Tex. 238, 294 S.W.2d 385; City of Houston v. Southwestern Bell Tel. Co., Tex.Civ.App., 263 S.W.2d 169.

The application of this rule has been limited in Texas to suits on behalf of the franchise holder. City of El Paso v. El Paso City Lines, Tex.Civ.App., 227 S.W. 2d 278. Plaintiffs have cited us to cases from other jurisdictions which have given a consumer the right to seek relief from the courts for excessive utility rates. Among these are: Griffin v. Goldsboro Water Co., 122 N.C. 206, 30 S.E. 319, 41 L.R.A. 240; Washington Water & Electric Co. v. Pope Mfg. Co., 176 Ga. 155, 167 S.E. 286; Kiefer v. City of Idaho Falls, 49 Idaho 458, 289 P. 81; Holton Creamery Co. v. Brown, 137 Kan. 418, 20 P.2d 503; Hicks v. City of Monroe Utility Co., 237 La. 848, 112 So.2d 635; Twitchell v. City of Spokane, 55 Wash. 86, 104 P. 150, 24 L.R.A.,N.S., 290.

■ We expressly do not determine this issue, as in our opinion the trial court did not err in dismissing the suit for want of jurisdiction. It is fundamental that courts have no initiative in the matter and that administrative remedies must be exhausted before the courts will intervene. Glen Oaks Utilities, Inc. v. City of Houston, supra. Sec. 135 of the San Antonio City Charter provides in part that: "The council shall have the power to call a public hearing, giving reasonable notice to the holder of a franchise, to determine whether or not an application to increase rates shall be granted or to determine whether or not the rates currently charged by any holder of a franchise for the service rendered are excessive." By this provision, the council may be called upon to determine whether rates are excessive, and it does so by calling a public hearing. Since it is the council and not the court which must make this initial determination, one must first take his complaint there. There is no allegation or contention that plaintiffs had ever sought any relief from the City before filing this suit.

In San Antonio Transit Co. v. City of San Antonio, Tex.Civ.App., 323 S.W.2d 272, Chief Justice Murray, speaking for this Court, said:

"A transit company desiring to increase its rates must apply to the City Council for a new rate and must invoke the rate fixing powers of the City before it may resort to the courts. (Citing authorities.) * * *

"It is quite possible that with the inflationary period we have been having for some time, that a rate that was proper yesterday may be insufficient today, but before a company can refuse to continue to apply the existing rate it must go before the City Council and seek a new rate, as a prerequisite to going into court and seeking to enjoin the existing rate. The City Council is the proper body in the first in-

stance to set aside an old rate and fix a new one."

This rule was followed in City of Houston v. Memorial Bend Utility Co., Tex.Civ. App., 331 S.W.2d 418, wherein it was held:

"When the ordinance was passed, the rate fixed became the rate promulgated by law and it could not be changed except in a manner provided by law. The utility could not itself promulgate new rates until the existing rates fixed by law be set aside. The only way the rates could be changed would be through a hearing before the City Council. The courts could not intervene until appellee first exhausted its remedy before the City Council. San Antonio Transit Company v. City of San Antonio, Tex.Civ. App., 323 S.W.2d 272, no writ hist. Of course, if the Council should deny a hearing and seek to continue to enforce an ordinance that appellee contends operates to confiscate its property, the courts would intervene to determine whether there was in fact confiscation."

Since there was no allegation that plaintiffs had complained of excessive rates to the City Council or sought to have them lowered, the courts could not intervene and the suit was properly dismissed.

■ We do not believe the plaintiffs have a justiciable interest to assert this cause of action complaining of excessive rates charged all consumers, and the suit was properly dismissed for that reason. In San Antonio Conservation Society v. City of San Antonio, Tex.Civ.App., 250 S.W.2d 259, writ ref., it was held that suit to enjoin construction of a bridge could not be brought by the Conservation Society, its members, or persons who owned property on the river and alleged they would be financially affected by depreciation of their property if the bridge was constructed across the San Antonio River. The Court held they had no justiciable interest to au-

thorize the bringing of suit, as they shared the San Antonio River in common with all the people of San Antonio and with the public in general, and "any impairment of this right is an injury or damage sustained by appellants in common with the general public. Only lawfully constituted guardians of the public interest may maintain actions for the redress of such character of injuries." See also Estes v. City of Granberry, Tex.Civ.App., 314 S.W.2d 154, wr. ref.; West Tex. Utilities Co. v. Smith, Tex.Civ.App., 168 S.W.2d 665, wr. ref.; Powell v. City of Baird, Tex.Civ. App., 132 S.W.2d 464; City of Corpus Christi v. Flato, Tex.Civ.App., 83 S.W.2d 433.

■ For these reasons the trial court did not err in dismissing plaintiffs' cause of action for want of jurisdiction. This was not a trial on the merits and the court erred in dismissing the suit "with prejudice." Crofts v. Court of Civil Appeals, Tex., 362 S.W.2d 101; McDonald, Texas Civil Practice, § 17.20. We, therefore, reform the judgment to strike these two words from the judgment entered in this cause.

The order of dismissal as reformed is hereby affirmed.

MURRAY, Chief Justice (dissenting).

I do not concur in the opinion of the majority and now give my reasons for my dissent.

The trial court makes it plain in its judgment that it holds that the district court does not have jurisdiction to hear a cause between a consumer or rate-payer of a municipally owned utility, though his property is being confiscated as a result of the City Council or some other body's fixing gas and electric rates so high as to confiscate his property.

The majority readily admit that if the council of a home rule city fixes rates so low as to conficate the property of a utility company, that such utility company, after

exhausting prescribed administrative remedies, can go into court and enjoin the city from enforcing such confiscatory rate. There is no question but that rate fixing is a legislative function that can be performed in Texas, under our Constitution and laws, by the Legislature, in the first place, and by the City, where such power has been delegated to the City, but where the City fixes utility rates so low as to confiscate the property of the utility, it can go into court, not to fix rates, a legislative function, but to enjoin the enforcement of such confiscatory rate. The majority say they are not deciding, in their opinion, whether the courts are equally open to a consumer or rate-payer, where the rate fixed by the City Council is so high as to confiscate his property. The majority have held in their opinion that appellants herein do not have a justiciable interest in the subject matter of this suit that will permit them to maintain this suit. It occurs to me that in making this decision the majority have decided the above question in the negative.

The first ground, according to the opinion of the majority, why the district court does not have jurisdiction of this suit is that administrative remedies of appellants must be exhausted before the courts will intervene. The statutes of this State, the charter and ordinances of the City of San Antonio, give to a consumer or rate-payer of the City's utility company no administrative remedy whatever, much less an adequate one. If people who are having their property confiscated are to be denied a hearing in the courts, there must be prescribed, either by State statute, or, as here, by the charter or ordinances of the City, an adequate administrative remedy, or otherwise appellants will be denied the equal protection of the law and their property is taken from them without due process of law.

In 1 Tex.Jur.2d, § 37, p. 676, we find the following:

"Conformity to the statutory requirements is essential to invest a court

with authority and jurisdiction to hear and determine the issue involved by the decision, ruling, or order of an administrative agency. As a condition precedent to the right to contest the validity of an agency's order or decision, an aggrieved person is not required, *absent statutory requirement therefor,* first to apply to the agency to rescind or modify the action which it has taken. Where, however, the legislature has *provided a mandatory method of review by an administrative agency,* under the doctrine of exhaustion of administrative remedies resort must first be had to such method before the courts will entertain jurisdiction, unless the administrative agency or commission has refused to act, or has acted illegally, arbitrarily, or beyond the scope of its authority.

"Where review is sought in a suit to set aside the agency's action, the court acquires jurisdiction on the proper filing of the suit." (Emphasis mine.)

In attempting to show that there was a prescribed administrative procedure to be followed by utility consumers for relief from confiscatory rates, the majority have set forth a part of Sec. 135 of the San Antonio City Charter. The quotation shows upon its face that while a right to a hearing before the City Council is extended to a utility company or a franchise holder as to whether utility rates should be increased, no right whatever is given to the consumer or rate-payer to be heard as to whether rates should be decreased. A rate hearing can only be initiated by the franchise holder by petition to the council or by the council on its own initiative, with notice to the franchise holder, but apparently great pains were taken to not give such a privilege to a consumer or rate-payer. The utility is entitled to notice but not the rate-payer, he is completely ignored by Section 135, as well as the other sections of the charter.

When we consider that the purchase and operation of the Gas and Electric Company

was done without liability on the City of any taxpayer, and that all of the cost of this entire transaction was to be borne by the consumers of the utility services and products, it would seem that these payers of all obligations should have some consideration and should have some tribunal where they can be heard as a matter of right, when the City enacts rates, or permits trustees to do so, that confiscate their property. Neither the statutes nor the city charter, nor any city ordinances accord to the consumer the right to be heard, and now he finds the courts closed to him. He must silently suffer his property to be confiscated without a hearing before any tribunal, judicial or administrative. As was said by Chief Justice Hickman, speaking for the Supreme Court, in Glen Oaks Utilities, Inc. v. City of Houston, 161 Tex. 417, 340 S.W.2d 783:

> "We cannot sustain the City's position that the court has no jurisdiction over the question of procedural due process because the ordinance on its face is regular and valid, and the court is not authorized to go behind the ordinance to investigate the facts of its passage. It is settled law that procedural due process requires that a rate-fixing body give due notice to the utility involved and grant a hearing before enacting an ordinance. * * * Justice requires that a court must have authority to go behind an ordinance which is valid on its face and inquire into the facts surrounding its enactment; otherwise the utility would have a right without a remedy."

It is true that the Court was speaking of the rights of utilities, but the principle laid down applies equally to consumers of utility products.

The majority have held that the consumer must first exhaust his administrative remedy. I ask, what administrative remedy? Where is it to be found? It has not as yet been pointed out by any one.

There are numerous cases holding that, while the courts will hear a utility company's contention that rates are so low that its property is being confiscated, the consumer will not be heard to contend that the rates are so high as to be confiscatory of his property. The only reason given for this unjust discrimination is that a consumer is not required to buy the services and products of a utility company, and if he considers such rates too high he can simply do without such services and products. If there ever was a time when this was true, it is not true today in the large City of San Antonio of well over a half million people. To say that a person can live in one of our large metropolitan cities today and not subscribe to public utilities is to ignore reality. How could a person maintain his home or business in the City of San Antonio today without electricity, gas, telephone, water and sewerage connections? It simply cannot be done, it is an utter impossibility. This doctrine of existing in a large city without public utilities has been repudiated in this State by our Supreme Court in City of Texarkana v. Wiggins, 151 Tex. 100, 246 S.W.2d 622.

The majority hold that appellants herein do not have a justiciable interest to assert this cause of action. In support of this contention they cite San Antonio Conservation Society v. City of San Antonio, Tex. Civ.App., 250 S.W.2d 259; Estes v. City of Granbury, Tex.Civ.App., 314 S.W.2d 154; West Texas Utilities Co. v. Smith, Tex. Civ.App., 168 S.W.2d 665; Powell v. City of Baird, Tex.Civ.App., 132 S.W.2d 464; City of Corpus Christi v. Flato, Tex.Civ. App., 83 S.W.2d 433. I do not disagree with the holdings of these cases, they are, speaking generally, suits by taxpayers, property owners, conservation societies, competing utility companies and other organizations and inhabitants of a city, to enjoin the city from entering into a certain contract, or something similar. None of those cases deal with a consumer or ratepayer who comes into court alleging that

the City is permitting the utility company to collect from him money at a rate that is confiscatory of his property. It cannot be logically said that a person who is having money wrongfully taken from him each month by a confiscatory rate has no justicible interest in endeavoring to put a stop to such procedure. Before he can have his money wrongfully taken away from him by a public utility he must be accorded "due process of law," which right is accorded to him by both the federal and state constitutions. U. S. Const., Amendments 5 and 14; Texas Const. Art. 1, §§ 3, 13, 17, 19, Vernon's Ann.St.

In 13 Words and Phrases, p. 539, we find the following definition of "due process of law":

" 'Due process of law' does not mean legislative enactment, but condemnation by judicial decree. The Legislature cannot usurp the right and the power of the courts to determine every question concerning life, liberty, or property."

Other definitions of "due process of law," found in the above work, are as follows:

" 'Due process of law' requires notice to all interested parties and an opportunity for them to be heard. * * *

" 'Due process' implies a notice and hearing but the hearing must not of necessity be in the courts, and it may be before the appropriate administrative agency. * * *

" 'Due process of law,' guaranteed by Constitution, includes notice and hearing as matter of right in matters wherein one's property rights are involved. * * *

" 'Due process of law' as to procedure means notice and opportunity to defend in an orderly proceeding before a competent and impartial tribunal having jurisdiction of the case. * *

" 'Due process of law' is a law which hears before it condemns, which proceeds upon inquiry and renders judgment only afterwards, and such due process of law is required both by Federal and State Constitutions."

Whether or not the trial court had jurisdiction of this cause must be determined by the pleadings. No hearing on the merits was undertaken. According to the allegations, appellants are being charged by the Gas and Electric Company for its products and services at a rate that is confiscatory of their property. The City of San Antonio has contracted away its legislative right to fix utility rates and has not exercised such legislative right since it purchased the public service company in 1942. The indenture trustees now fix utility rates and they are making and collecting money from appellants at rates that are unreasonable and confiscatory, and unless they can appeal to the courts they have no legal remedy against this alleged confiscation of their property. Even if appellants' petition were subject to general demurrer, the trial court would not be justified in dismissing this cause. Rule 90, T.R.C.P.

The majority have held that the cause was properly dismissed "Since there was no allegation that plaintiffs had complained of excessive rates to the City Council or sought to have them lowered." If the pleadings were defective in this respect, the defect related to a matter that might have been cured by amended pleadings. No such opportunity was given appellants.

According to the allegations of the petition, appellants' property is being confiscated by exorbitant rates fixed not by the City Council, but by the indenture trustees. No administrative procedure is provided whereby they may be heard as to their complaint. Under such circumstances the doors of the court should be open to them, so that they can be accorded due process of law. Art. 1, § 13, Vernon's Ann.Tex. Const., provides in part as follows:

"* * * All courts shall be open, and every person for an injury done him, in his lands, goods, person or

reputation, shall have remedy by due course of law."

I would reverse the judgment of the trial court, not only because the suit was dismissed with prejudice, but also because I feel that appellants were entitled to be heard upon the numerous allegations of their petition. In any event, they should have been given an opportunity to amend.