**AMOCO PRODUCTION COMPANY,**
Petitioner,

v.

**FEDERAL POWER COMMISSION,**
Respondent,

Phillips Petroleum Company, Intervenor.

No. 72–1680.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Sept. 13, 1973.

Decided Nov. 12, 1973.

Rehearing Denied Dec. 3, 1973.

William H. Emerson, Tulsa, Okl. (J. P. Hammond, Tulsa, Okl., H. O. Hickman, Denver, Colo. and Carroll L. Gilliam of Grove, Jaskiewicz & Gilliam, Washington, D. C., on the brief), for petitioner.

John H. Burnes, Atty., Federal Power Commission (Leo E. Forquer, General Counsel, and George W. McHenry, Jr., Acting Solicitor, FPC, on the brief), for respondent.

John L. Williford, Bartlesville, Okl. (Kenneth Heady and Thomas M. Blume, Denver, Colo., on the brief), for intervenor.

Before PHILLIPS, HILL and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The matter before the court is a petition for review, under the provisions of the Natural Gas Act, 15 U.S.C. § 717 et seq. The ruling complained of is the rejection by the Federal Power Commission of certain gas rate increases proposed by Amoco Production Company. The proposed increases relate to the price paid to Amoco by Phillips Petroleum Company for purchase of natural gas produced in the Hugoton gas field in the panhandle portions of Texas and Oklahoma. At issue in addition to the order mentioned is a question as to the meaning and effect of the Commission's decision and order in an earlier decision, FPC Opinion No. 586, Area Rate Proceeding (Hugoton-Anadarko Area), September 18, 1970, 44 FPC 761; also the effect of that decision and order on previously existing contractual arrangements between Amoco and Phillips. Essentially Amoco maintains that the area rate order when considered with its 1945 contract with Phillips gives rise to their receiving an increase of the rate paid by Phillips to it in payment of gas at the wellhead.

The pertinent facts and genesis are detailed as follows:

This controversy goes back to December 1945 at which time Phillips contracted to supply large quantities of natural gas from the Hugoton gas field to Michigan Wisconsin Pipe Line Company, for further transport to and sale by Michigan Wisconsin in north-central United States.

To insure that it could supply adequate quantities of gas to Michigan Wisconsin, Phillips contracted to purchase some gas from wells operated by other producers in the Hugoton gas field, one such producer being Amoco's contract predecessor, Stanolind Oil and

Gas Company.[1] Phillips collected at central points for processing the gas acquired through such purchases, as well as the gas produced on its own leases. The residue gas after processing was then sold to Michigan Wisconsin. This off-lease transportation of gas, together with the compression, treatment and liquid hydrocarbon extraction incident thereto, is known as substantial off-lease gathering.

The purchase contracts between Phillips and Stanolind (now between Phillips and Amoco) were to run as long as the gas leases on the acreage subject to the contracts remained in effect and gas continued to be produced from the leases. These contracts, we are told, also contain provisions governing the price to be paid by Phillips to Stanolind (Amoco) for gas produced. These provisions are not directly in issue here. There is no dispute that both Amoco's wellhead sales to Phillips and Phillips' sales after substantial off-lease gathering to Michigan Wisconsin are subject to rate regulation by the FPC under the Natural Gas Act.

In 1970, the FPC established an updated system of rate regulation for sales of natural gas produced in the Hugoton-Anadarko area. Opinion No. 586, Area Rate Proceeding (Hugoton-Anadarko Area), September 18, 1970, 44 FPC 761. In that proceeding, the FPC established certain Base Area Rates which it considered "just and reasonable" for wellhead sales of gas by producers in the Panhandle and Hugoton Fields, such as were being made by Amoco to Phillips.[2] The Commission also provided for certain adjustments to these Base Area Rates, one of which involved the situation in which sale of the gas was made after substantial off-lease gathering (the situation in which Phillips sells to Michigan Wisconsin).[3] The Base Area Rates, subject to adjustment where appropriate, were in effect ceiling rates for sales of natural gas, since the Commission determined that any contracts calling for rates in excess of the applicable rates were "in that respect unjust and unreasonable."[4] The Commission also established a schedule of minimum rates for sales of gas produced in the Hugoton-Anadarko Area, also providing for a rate adjustment when substantial off-lease gathering had taken place.[5] The Commission specifically provided that parties making sales of gas under contracts which were below the minimum rates established could ap-

---

1. Phillips entered into its purchase contracts with Stanolind on December 5 and December 7, 1945. The sales contract to Michigan Wisconsin was signed on December 11, 1945.

2. "(c) *The Base Area Rates.* The following base area rates per Mcf (at 14.65 psia) are hereby established and subject to the adjustments provided in paragraphs (d), (e) and (f):
    (1) Gas sold under contracts dated prior to November 1, 1969:
    (i) For all gas produced in the Panhandle and Hugoton Fields:
    (aa) Prior to July 1, 1972:
    12.50 cents in Kansas;
    13.25 cents in Oklahoma;
    13.50 cents in Texas.
    (bb) On and after July 1, 1972:
    13.50 cents in Kansas;
    14.25 cents in Oklahoma;
    14.50 cents in Texas." 44 FPC at 786.

3. "(e) *Adjustment for Substantial Off-Lease Gathering.* Where delivery of the gas is made after substantial off-lease gathering by the producer, whether at a plant tailgate or at a central point, the applicable area rate shall be adjusted upward above the base area rate:
    (1) For gas produced in the Panhandle and Hugoton Fields:
    (i) Prior to July 1, 1972, 2 cents per Mcf.
    (ii) On or after July 1, 1972, 2.5 cents per Mcf." 44 FPC at 788.

4. Opinion 586, 44 FPC at 785.

5. "(B) *Minimum Rates*
    (1) Minimum rates per Mcf for natural gas produced in the Hugoton-Anadarko area are hereby established (at 14.65 psia) as follows:
    10.0 cents in Kansas;
    10.5 cents in Oklahoma;
    10.75 cents in Texas.
    For sales made after substantial off-lease gathering by the producer, or at a plant tailgate, the applicable minimum rate shall be adjusted by adding the applicable amount of adjustment provided for substantial off-lease gathering." 44 FPC at 789.

ply for and would receive approval of price increases up to the minimum price level regardless of their contractual obligations to sell at a lower rate. 44 FPC at 789.[6]

■ Based upon the area rate schedules propounded by the Commission in Opinion 586, Phillips proposed and received approval from the FPC for an increase in its rates for gas sales to Michigan Wisconsin. Phillips' new sale price to Michigan Wisconsin was approximately 16.22 cents/Mcf, to become effective on July 1, 1972.[7] Amoco then filed, on May 26 and June 9, 1972, proposed changes in its gas rate schedules which governed its sales to Phillips. The proposed changes, also to become effective on July 1, 1972, would have raised Amoco's sales rates to Phillips to approximately 13.94 or 13.95 cents per Mcf. (Record, pp. 1–12). In essence, Amoco stated to the Commission that these proposed price increases were based on the contention that under Opinion No. 586 Phillips was only entitled to collect an off-lease gathering fee of 2.5 cents per Mcf and that because Phillips was collecting a sales price of 16.22 cents per Mcf, it was obligated to pay a wellhead purchase price to Amoco of approximately 13.95 cents per Mcf.[8]

The Commission rejected Amoco's proposed rate increases by letters dated July 5 and July 21, 1972, stating that the increases were neither contractually provided for, nor required by the provisions of Opinion 586. (Record, pp. 19–22). Amoco's Application for Rehearing was denied by the Commission on August 24, 1972 (Record, pp. 40–42). Amoco now seeks review by this Court, under 15 U.S.C. § 717r, of the Commission's rejection of the proposed rate increases.

## AMOCO'S ARGUMENTS:

The Commission's denial of Amoco's proposed rate increases was erroneous because:

I. (a). In the Hugoton-Anadarko Area Rate Decision, the FPC limited off-lease gatherers to a maximum charge of 2.5 cents per Mcf (after July 1, 1972) for the service they performed. Therefore,

(b). Since Phillips is allowed by the Commission to charge 16.22 cents per Mcf for gas sales to Michigan Wisconsin, Phillips must now also be required to pay at least 16.22 minus 2.5 cents per Mcf to Amoco for wellhead purchases of gas, regardless of the fact that the con-

---

6. Opinion 586 was the culmination of long administrative consideration. An initial Hearing Examiner's decision establishing rates in the Hugoton-Anadarko area was issued on September 16, 1968. Exceptions were filed by numerous participants to the hearings. On May 24, 1968 a "settlement proposal" was filed by a group of producers in the area, but several other concerned parties opposed that proposal. After more hearings, another settlement proposal was filed by a number of the participants on January 29, 1970. It was also opposed by several interested parties. However, the Commission considered that final settlement proposal on its merits, and after taking into account objections to it, decided that its provisions were just and reasonable and expressly adopted the provisions of the proposal. 44 FPC at 781.
The important consideration in such adoption of the proposal's provisions is the Commission's understanding of the meaning of those provisions. The intent of the Commission is

found in the Commission's discussion of the provisions, and in the final order in Opinion 586. To our way of thinking this is to be given great weight.

7. Under 15 U.S.C. § 717c, no natural gas company subject to the Natural Gas Act may make any changes in its rates or contracts relating thereto, unless it has first given notice to the Commission and to the public. The Commission then has the authority to suspend the implementation of the proposed rates, to hold hearings, and to determine that the proponent has not justified the change in rates or contracts. Such a Commission determination is eventually subject to judicial review. 15 U.S.C. § 717r.

8. The differential between Phillips' sale price to Michigan Wisconsin and Amoco's proposed sale price to Phillips does not appear to be exactly 2.5 cents per Mcf because certain minor tax reimbursements and adjustments have not been mentioned here.

tract between Phillips and Amoco calls for a lower wellhead purchase price.

II. The Hugoton-Anadarko Area Rate Decision must be construed in the manner stated in I.(a). above, since any other construction would make that decision unlawful. This conclusion is reached because it would then appear that Opinion 586 had failed to regulate the price charges of the middleman-off-lease gatherer, and the statute requires that the Commission insure that all rates are just and reasonable.

III. Even if Opinion 586 does not require it, the Commission should have treated Phillips' conduct in (a) agreeing to the Amended Settlement Proposal which formed the basis for the FPC decision in Opinion 586, and (b) subsequently requesting and obtaining a rate increase from the FPC for its sales to Michigan Wisconsin, as implying in fact or law a contractual change between Phillips and those from whom Phillips purchases wellhead gas, such as Amoco. This implied contractual change would require Phillips to pay wellhead prices to Amoco and other producers which would operate to insure that Phillips received no more than 2.5 cents per Mcf for its off-lease gathering activities.

IV. Amoco finally contends that reversal of the Commission's determination is required because the administrative record before the court is not sufficiently complete to permit judicial review.

## INTERPRETATION OF OPINION 586.

The essential problem is as previously noted one of interpretation and construction, the salient question being whether Opinion 586, which expressly adopted the Proposed Settlement Agreement, intended ceiling prices after off-lease gathering to be computed by adding the requisite 2.5 cents to the actual wellhead prices or, rather, to the previously designated wellhead ceiling rates.[9] We conclude that the latter was the intention of Opinion 586.

Amoco contends that the drafters of the settlement agreement have intended the computation to be based upon actual wellhead prices since the key word "ceiling" was omitted from the disputed phrase. In addition, Amoco argues that a contrary interpretation would render the Opinion unlawful as violative of sections 4(a) and 4(b) of the Natural Gas Act.[10] The Commission has construed the Opinion to require ceiling price after off-lease gathering to be based upon the wellhead ceiling price

9. The relevant portions of the Settlement Agreement state:

"2. *Ceiling Price for Wellhead Deliveries.* The applicable wellhead ceiling prices per Mcf at 14.65 psia, including all state taxes effective on the date of this proposal, shall be:

    Kansas 12.50 cents
    Oklahoma 13.25 cents
    Texas 13.50 cents

3. *Ceiling Price for Deliveries Made After Substantial Off-Lease Gathering by a Producer, Whether at a Plant Tailgate or at a Central Point.* Before July 1, 1972, add 2 cents per Mcf to the applicable wellhead prices. On and after July 1, 1972, add 2.50 cents to the applicable wellhead prices. Attached hereto as Exhibit A–1 is a list of deliveries by operator, known to the undersigned, to which this paragraph applies." Although contained in the Proposed Settlement Agreement, this provision was expressly approved in the Commission's Opinion. 44 FPC at 781.

10. Section 4(a) All rates and charges made, demanded, or received by any natural-gas company for or in connection with the transportation or sale of natural gas subject to the jurisdiction of the Commission, and all rules and regulations affecting or pertaining to such rates or charges, shall be just and reasonable, and any such rate or charge that is not just and reasonable is hereby declared to be unlawful.

Section 4(b) No natural-gas company shall, with respect to any transportation or sale of natural gas subject to the jurisdiction of the Commission, (1) make or grant any undue preference or advantage to any person or subject any person to any undue prejudice or disadvantage, or (2) maintain any unreasonable difference in rates, charges, service, facilities, or in any other respect, either as between localities or as between classes of service.

plus 2.5 cents. The FPC's interpretation is entitled to great weight, since a presumption of validity attaches to a Commission's exercise of its expertise. Permian Basin Area Rate Cases, 390 U. S. 747, 767, 88 S.Ct. 1344, 1360, 20 L. Ed.2d 1312 (1968).

■ We have concluded that the Commission's interpretation is the proper one. The questionable language immediately follows a provision concerning wellhead ceiling prices. The disputed phrase states simply: "[A]dd 2.50 cents to the *applicable wellhead prices*." (Emphasis added). Although the adjective "ceiling" is omitted, the word "applicable" is sufficiently descriptive to denote a reference to the varying wellhead ceiling prices enumerated in the paragraph preceding it. The term "applicable" refers to the fact that the ceiling rates differ among Kansas, Oklahoma and Texas gas fields.

Our interpretation is corroborated in the text of Opinion 586 which approved and incorporated the settlement proposal. The Opinion uses the term "base area rates" when referring to wellhead ceiling prices.[11] Appropriate adjustments to the base area rates are made for substantial off-lease gathering. The Opinion states unequivocally that "the applicable area rate shall be adjusted upward." Thus, under this provision, it is indeed the wellhead *ceiling* price (designated the "base area rate") to which the 2.5 cent adjustment is added. Since Opinion 586 expressly adopted the substantive provisions of the proposed settlement agreement, the final language in the Opinion may be deemed a proper clarification of the ambiguities left lurking in the agreement.

As further corroborative evidence, we need only turn to other provisions within the Settlement Proposal itself. There, under Part V, a minimum rate is established, both for sales at the wellhead and for sales made after substantial off-lease gathering.[12] The latter rate is determined by adding the 2.5 cents gathering charge to the *minimum wellhead rate*. It strikes us as inconsistent to treat the *minimum* price for sales after gathering by adding the gathering charge (2.5 cents) to the *minimum wellhead price*, and at the same time to compute the *ceiling* price for sales after gathering by adding the 2.5 cents gathering charge to *any* wellhead price. It is more logical to approach the minimum and maximum rates for sales after gathering as parallels. Together, they should delineate the limits of a lawful rate structure, each being based upon the respective minimum or maximum wellhead price.

■ Having determined that Amoco's construction of Opinion 586 was erroneous, we now take up Amoco's contention that the interpretation which we adopt renders Opinion 586 violative of sections 4(a) and 4(b) of the Natural Gas Act.[13] Whether Amoco's contention is meritorious is beyond the scope of the present inquiry. Amoco is not before this court to question whether Phillips' resale price is "unreasonable".[14] Amoco is here only to appeal a denial of its own proposed rate increase. If in fact Phillips' delivery price to the Michigan Wisconsin Pipe Line Company is *not* "just and reasonable" under section 4, then this is a matter which is to be raised by parties "aggrieved" within the meaning of section 19 of the Natural Gas Act.

11. See notes 2 and 3, supra, which set out the relevant portions of the Opinion.

12. The minimum rate per Mcf at 14.65 psia for sales at the wellhead to interstate pipeline companies shall be:
  Kansas 10.0 cents
  Oklahoma 10.50 cents
  Texas 10.75 cents

For deliveries made after substantial off-lease gathering or at a plant tailgate, the minimum rate shall be determined by adding the applicable gathering charge set forth above to the *minimum wellhead rate*. (Emphasis added.)

13. See note 10, supra.

14. Its standing to do so is questionable.

▆▆▆ Amoco has here attempted to avoid its contractual obligations. The sale price to which Amoco agreed in its long-term contract with Phillips must be given deference by the FPC and also by this court. The Supreme Court has specifically held that the Natural Gas Act was not intended to abrogate private contract rights. United Gas Pipe Line Co. v. Mobile Gas Service Corp., 350 U. S. 332, 76 S.Ct. 373, 100 L.Ed. 373 (1956). The FPC is empowered to change a negotiated contract rate only when it is so low or so high as to adversely affect the public interest. FPC v. Sierra Pacific Power Co., 350 U. S. 348, 76 S.Ct. 368, 100 L.Ed. 388 (1956). No such facts exist in this case. The contract price at which Amoco sells to Phillips is neither below the minimum nor above the ceiling established by the FPC. Amoco has also sought, as we have noted, to expand the letter and spirit of Opinion 586.

▆▆▆ Nor is there merit in Amoco's argument that judicial precedent requires Phillips' resale rates to be based upon the actual purchase price paid by Phillips. Cities Service Gas Co. v. FPC, 424 F.2d 411 (10th Cir. 1969), does not govern. That decision was concerned with the validity of an FPC order to reduce the jurisdictional rates charged by a particular gas company and to require a refund of excess collections. The issue was whether, in arriving at the rates to be charged, the Commission should have looked to the company's costs or, rather, to the price fixed by contract. We held that the FPC did not abuse its discretion in pricing the gas on the basis of the gas company's cost of service. At bar, we are concerned with the interpretation of an FPC order concerning *area* rates, not rates charged by an individual company. When area rate regulation is at issue, the FPC is not obligated to guarantee each company a fixed profit on its particular cost basis. Permian Basin Area Rate Cases, *supra*; California v. FPC (In re Hugoton-Anadarko Area Rate Case), 466 F.2d 974 (9th Cir. 1972). Moreover, as we have here said, Amoco is not in a position to complain that Phillips is receiving an excessive rate of return.

## ALLEGED MODIFICATION OF THE CONTRACT

▆▆▆ Amoco's contention that Phillips' conduct in (a) entering into a settlement agreement calling for a 2.5 cent off-lease gathering differential, and then (b) applying to the FPC for a rate increase in its sales to Michigan Wisconsin in effect modifies the Amoco-Phillips contracts merits little discussion. Even if this theory were not such a strained one under the fact situation presented, it would still be premised upon Amoco's contention that the settlement agreement, as well as Opinion 586, imposes a *maximum* amount of 2.5 cents per Mcf which an off-lease gatherer can obtain for the service he renders. As noted above, this contention is erroneous. Under our reading of the settlement agreement, as clarified by Opinion 586, the argument that a contract modification is to be implied in law makes no impact whatever.

## ALLEGED INADEQUACY OF THE RECORD

▆▆▆ Amoco finally contends that the record before us is insufficient to permit judicial review. This is also without merit. It should be emphasized that we are not here reviewing the reasonableness of rates established by the Commission in Opinion 586. That decision has already been judicially reviewed and affirmed by the Ninth Circuit Court of Appeals. California v. FPC, *supra*. Our responsibility here is to determine whether, under a proper reading of Opinion 586 and the pertinent provisions of the Phillips-Amoco gas sales contracts, the Commission's rejection of Amoco's proposed rate increases was correct and reasonable. We do have an adequate record before us to make that determination.

The petition for review is denied.