The PUBLIC UTILITIES BOARD OF the CITY OF BROWNSVILLE, Appellant,

v.

CENTRAL POWER & LIGHT COMPANY and Magic Valley Electric Cooperative, Inc., Appellees.

No. 1440.

Court of Civil Appeals of Texas, Corpus Christi.

Sept. 13, 1979.

John A. Heller, Russell S. Johnson, Sawtelle, Goode, Davidson & Troilo, San Antonio, for appellant.

James F. McKibben, Jr., Dyer & Redford, Corpus Christi, for appellees.

## OPINION

YOUNG, Justice.

This appeal arose from a territorial dispute between three utility systems all of which were retail suppliers of electrical energy. Plaintiffs, Central Power and Light Company (CPL) and Magic Valley Electric Cooperative, Inc. (MVEC), sought and were granted a temporary injunction preventing the Public Utilities Board of the City of Brownsville (PUB) from "extending, constructing or erecting any electrical facilities or furnishing any electrical service" to two residential subdivisions located near, but outside of, the north limits of the city of Brownsville. PUB appeals. We affirm.

PUB attacks the granting of the temporary injunction by the trial court on these grounds: lack of jurisdiction of the trial court; lack of justiciable interest of the petitioners CPL and MVEC; absence of the Attorney General as an indispensable party; failure of the petitioners to exhaust their administrative remedies; and abuse of discretion by the trial court.

In 1975, the Public Utility Regulatory Act (PURA)[1] was enacted and codified as Tex.Rev.Civ.Stat.Ann. art. 1446c (Supp. 1978). Under the PURA the Public Utility Commission (Commission) was established. Section 2 thereof sets out the purpose of the PURA as an Act, among other things, to establish a comprehensive system which is adequate to the task of regulating public utilities as defined by the Act. The effect of the enactment of the PURA upon the parties here underlies their dispute.

Soon after the PURA was enacted in 1975, the Commission asked all utilities in Texas to meet and decide which areas they would claim for certificates of convenience and necessity (authority to provide service). Compare *Southwestern Public Service Company v. Public Utility Commission*, 578 S.W.2d 507, 509 (Tex.Civ.App.—Austin 1979, writ ref'd n. r. e.). The evidence reflects that the meetings involved all aspects of negotiation. For example, one utility might give up a particular area or right in return for another area or right.

As a result of these meetings, appellees CPL and MVEC and appellant (PUB) agreed that all potential customers within the city limits of Brownsville would be served by the PUB. They also agreed that in most, but not all, cases property to the north of the city limits would be dually certificated to CPL and MVEC. These certification agreements were reflected by lines drawn on a large map of Texas and several county wide maps, including a map of Cameron County. The Commission then entered a certification order (entitled Docket No. 29), which adopted the map of Cameron County as agreed on by appellees and appellant. The agreement as to exactly where PUB's service would end and CPL's and MVEC's would begin to the north of the Brownsville city limits was unclear, however, in that the only memorial of their agreement and the Commission's order was the above mentioned county map with a scale of one inch to a mile, and the dividing lines were drawn with a wide felt marker pencil. Consequently, the parties in the present case all assert the right to provide service to the area within the width of the marker line.

Sometime in late July or early August of 1978 the PUB started setting its service poles into a new housing development immediately to the north of the Brownsville city limits. In doing so, the PUB removed one MVEC pole and disrupted service to some of its customers.

---

1. All statutory references herein will refer to the PURA unless otherwise noted.

As a result, on August 17, 1978, CPL and MVEC brought this action in the 197th District Court of Cameron County seeking a temporary restraining order, temporary injunction and permanent injunction to enjoin the PUB from extending its service poles and lines into an area dually certificated to CPL and MVEC under the PURA. There is no copy of a temporary restraining order in the record, but apparently one was issued.

Thereafter, on August 21, 1978, CPL and MVEC filed a complaint against the PUB with the Commission alleging the same wrongdoing that was alleged in the district court and asked that the Commission issue a cease and desist order against the PUB, similar to a cease and desist order the Commission had previously issued against the PUB in Docket No. 533 of the Commission. Evidently, Docket No. 533 involved a similar dispute between the PUB and MVEC regarding other land just outside the Brownsville city limits. Following the August 21 filing, the Commission ordered that a hearing be held on August 31, 1978, to "take evidence on the allegations and consider interim relief, if necessary." Soon thereafter, the Commission continued the hearing to September 7, 1978, because the PUB had not received adequate notice of the first hearing. The PUB then filed a motion to dismiss the action before the Commission alleging that the Commission lacked jurisdiction to enforce its orders against municipally owned utilities, citing Sections 3(c), 3(c)(4), and 71. In short, it contended that it was not a "public utility" and that the Commission had no jurisdiction over the subject matter of the suit or relief requested. The PUB also defensively asserted that it possessed "grandfather rights" pursuant to Commission Rule 052.-02.05.056(b)(6)(B)[2] to serve part of the disputed area because it was serving that area prior to September 1, 1975.

On September 7 and 8, 1978, the parties herein participated in a two day hearing before the Commission concerning the issues addressed in this case; that is, what area was certificated to the PUB following the negotiations. Or, in other words, what was the agreement of the utilities as manifested by the map and what part did the grandfathering rule play in this agreement. The Commission's hearing examiner then took the matter under advisement.

On September 15, 1978, the parties appeared in the district court (trial court here) for the instant temporary injunction hearing. The court heard evidence on the same issues which were before the Commission and granted relief to CPL and MVEC temporarily enjoining the PUB from extending any further service to the areas to the north of the Brownsville city limits other than the area which the utilities apparently agreed would be governed by their understanding of the grandfather rule.

■ No findings of fact or conclusions of law were filed. Thus, the trial court judgment must be upheld on any legal theory supported by the record. *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.Sup.1978).

Appellant PUB brings seven points of error. Points 2 and 3 contend the trial court erred in granting the temporary injunction in this case because CPL and MVEC lacked a justiciable interest in the litigation and because the State of Texas, through the Attorney General, was not joined as an indispensable party.

---

2.    Certificates for Existing Service Area

"For purposes of granting Certificates of Convenience and Necessity for those facilities and areas which a utility was providing service on September 1, 1975, or was actively engaged in the construction, installation, extension, improvement of, or addition to, any facility actually used or to be used in providing public utility service on September 1, 1975, *unless found by the Commission to be otherwise,* the following rules shall prevail for certification purposes:

The facilities and service area boundary for the following types of utilities providing distribution or collection service to any area, or actively engaged in the construction, installation, extension, improvement of, or addition to such facilities or the utilities system as of September 1, 1975, shall be limited, *unless otherwise found by the commission,* to the facilities and the area which lie within 200 feet of any point along a distribution line, which is specifically deemed to include service drop lines, for electrical utilities." (Emphasis supplied).

Appellant here contends that the petitioners are, in effect, attempting to protect the interests of the public in general, rather than their own private interest. In doing so, appellant contends that the petitioners have no greater right than a private citizen, who under the facts of this case, would not have a justiciable interest sufficient to bring this cause. Thus, appellant alleges that the Attorney General is the proper party to enforce this public right. We disagree.

One of the cases appellant cites in support of its argument is *Southwestern Gas & Electric Co. v. City of Gilmer, Tex.,* 123 F.Supp. 11 (E.D.Tex.1954), aff'd 224 F.2d 794 (5th Cir. 1955). In *Gilmer,* the Court held that a utility serving the city of Gilmer, Texas, did not have a justiciable interest sufficient to bring suit to enjoin the Upsher Rural Electric Cooperative from providing electrical service to cooperative members within the city limits of Gilmer. Evidently, the Texas statute allowing the creation of rural cooperative companies stated that one of the purposes for which cooperatives could be organized under the act was the furnishing of electric energy to persons in rural as opposed to municipal areas. The Court's holding was based upon the idea that a utility may not seek injunctive relief against a competitor who is merely following a course of conduct which is ultra vires. Appellant claims that the facts in *Gilmer* are similar to those in the instant case and that the court herein should have dismissed this case because the appellees lacked a justiciable interest.

On the contrary, though, the holding and the language of *Gilmer* supports the result in this case. More specifically, the Court in *Gilmer* distinguished between the acts of a corporation which are merely without authority and those acts which are illegal. The Court explained that the cooperative's acts were ultra vires; i. e., without authority, but that there was no provision in the Texas law requiring either an individual or corporation to obtain a license or certificate of convenience for the sale and distribution of electricity within the limits of the city. *Southwestern Gas & Electric Co. v. City of*

*Gilmer, Tex.,* supra at 19. The Court then explained that the acts of the cooperative were not illegal in that Southwestern had no exclusive franchise to serve Gilmer and consequently none of its legal or equitable rights were being violated. Southwestern was only being damaged by lawful competition, although the competition was being conducted as an ultra vires act. The Court then concluded that the competition itself must be illegal in order for a competitor utility to have standing, or a justiciable interest, to seek injunctive relief against the illegal competition. In making this assertion the Court cited *Frost v. Corporation Commission,* 278 U.S. 515, 49 S.Ct. 235, 73 L.Ed. 483 (1929). See also *Tugwell v. Eagle Pass Ferry Co.,* 74 Tex. 480, 13 S.W. 654 (1888); *Missouri Pacific Truck Lines, Inc. v. Brown Express, Inc.,* 399 S.W.2d 430 (Tex. Civ.App.—Fort Worth 1966, writ ref'd n. r. e.); *Beene v. Bryant,* 201 S.W.2d 268, 272 (Tex.Civ.App.—Amarillo 1947, no writ); *West Texas Utilities Co. v. Smith,* 168 S.W.2d 665 (Tex.Civ.App.—Austin 1943, writ ref'd); Annot., 90 A.L.R.2d 7 (1963).

In the instant case the evidence indicates that the competition itself; i. e., operating without a certificate of convenience and necessity in an area already served by another utility with a certificate was illegal competition. See Section 50(2), which requires a retail public utility to obtain a certificate of public convenience and necessity. In accord with the above mentioned cases, we therefore hold that the appellees CPL and MVEC had a private justiciable interest in bringing this suit, and their interest was sufficient to bring the suit on their own accord without intervention of the Attorney General. Appellant's points 2 and 3 are overruled.

Appellant's points 1 and 4 contend that the trial court was without jurisdiction because the Commission had primary jurisdiction of this dispute and that the appellees had not exhausted their administrative remedies, which they were required to do before bringing this action. We disagree.

█ Primary jurisdiction is the principle which determines whether the court or the agency should make the initial decision. *Gregg v. Delhi-Taylor Oil Corp.,* 162 Tex. 26, 344 S.W.2d 411, 414 (1961), *Simmons v. Danco, Inc.,* 563 S.W.2d 376, 378 (Tex.Civ. App.—Dallas 1978, writ ref'd n. r. e.) The principle is concerned with promoting proper relationships between courts and administrative agencies charged with particular regulatory duties. *Nader v. Allegheny Airlines, Inc.,* 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976). Primary jurisdiction should be distinguished, however, from the concept of exhaustion of administrative remedies. Exhaustion concerns at what stage a party may secure a review of administrative action. *D & S Investments, Inc. v. Mouer,* 521 S.W.2d 118, 120 (Tex.Civ. App.—Austin 1975, writ ref'd n. r. e.). Thus, the issue of exhaustion of administrative remedies is not involved in this case because the issue herein does not concern when or at what stage the parties may secure a review of Commission action, but rather whether the Court or the Commission should make the initial decision as to temporary injunctive relief.

There are two principal arguments which support the theory of primary jurisdiction by the Commission, to wit: 1) that the Commission is staffed with experts trained in handling the complex problems presented, and 2) great benefit is to be derived from a uniform interpretation of the rules and regulations of an administrative body, whereas different results might be reached under similar fact situations by various courts or juries. *Gregg v. Delhi-Taylor Oil Corp.,* supra 344 S.W.2d at 415. In *Kavanaugh v. Underwriters Life Ins. Co.,* 231 S.W.2d 753, 755 (Tex.Civ.App.—Waco 1950, writ ref'd) the court explained primary jurisdiction as follows:

" 'The doctrine of primary jurisdiction is that the courts cannot or will not determine a controversy involving a question which is within the jurisdiction of an administrative tribunal prior to the decision of that question by the administrative tribunal, where the question demands the exercise of sound administrative discretion requiring the special knowledge, experience and services of the administrative tribunal to determine technical and intricate matters of fact, and a uniformity of ruling is essential to comply with the purposes of the regulatory statute administered. The principle is derived from a consideration of the nature of the question and of the inquiry and the action required for its solution.' "

In applying the underlying theories of primary jurisdiction to the facts of this case, we must first determine exactly what question or inquiry the trial court had to answer. Simply stated, the court was first asked to make a determination of what the maps showed or in other words, what the utilities agreed would be the boundary lines of their service areas. It was undisputed that the signed maps were the only manifestation of the utilities agreement, and that these ambiguous maps were made a part of the actual Commission certification order. A subpart of this determination involved how the parties intended to incorporate, if at all, the language of Commission Rule 152.02.05.056(b)(6)(B) into their agreement. For example, were certain "grandfather rights" negotiated away for rights to other areas, or did the lines drawn take into account the "grandfather rights" at all, and if they did, what interpretation did the parties intend for the grandfather rights as incorporated into their agreement.

In short, the court was called upon to construe an agreement which had been adopted by the Commission. See Section 56.[3] Construction of an agreement is not a problem which necessarily requires the expertise of the commission staff. Furthermore, the court's interpretation of that agreement is not essential to uniform administration of the PURA's rules. Com-

---

**3.** Sec. 56. "Contracts between retail public utilities designating areas to be served and customers to be served by those utilities, when approved by the commission, shall be valid and enforceable and shall be incorporated into the appropriate areas of public convenience and necessity."

pare *Sunset Express v. Gulf C. & S. F. Ry. Co.*, 154 S.W.2d 860, 862 (Tex.Civ.App.—Forth Worth 1941, writ ref'd w. o. m.). We recognize that an interpretation of the Rule, herein, had a bearing on the Court's decision in determining the parties' agreement, but this interpretation is not precedentially binding on the Commission, but must be limited to the facts of this case. The proper setting to construe the Rule, for purposes of uniformity, would involve a utility applying to the Commission for certification. After certification, the interpretation of the Rule will not necessarily control the Commission's intention as to any particular certificate of convenience and necessity, unless so specified in its order. Consequently, we find that the determination to be made by the Court herein was inherently judicial in nature and that the primary jurisdiction principle does not apply unless the Commission has explicitly been given exclusive jurisdiction. See *Gregg v. Delhi-Taylor Oil Corp.*, supra 344 S.W.2d at 415.

■ Secondly, the Court was called upon to interpret Section 50(2) of the PURA to determine whether the facts presented a probable right and a probable injury. We find the construction of a statute also to be an inherently judicial determination. Where questions are primarily judicial in nature, as in the present case, the courts are not ousted of their jurisdiction unless the legislature by valid statute has explicitly granted exclusive jurisdiction to the administrative body. *Gregg v. Delhi-Taylor Oil Corp.*, supra.

■ Section 16[4] of the PURA discusses the jurisdiction of the Commission to interpret its orders and the Act. In reviewing Section 16, we note that the first sentence applies only to "public utilities"; i. e., utilities other than municipally owned utilities. See Section 3(c) and 3(c)(4); *Pleitz and Little*, Municipalities and the Public Utility Regulatory Act, 28 Baylor L.Rev. 977, 978 (1976). The second sentence of Section 16 does not refer to interpreting orders or the Act. The third sentence of that section states that the Commission may call and hold hearings, and make findings and decisions with respect to administering the act, rules, orders and other Commission actions. This last sentence was obviously intended to give the Commission extensive judicial review of its orders and the Act. And, its orders include certificates of convenience and necessity. Section 3(p).[5] We do not view this third sentence as explicitly conferring exclusive jurisdiction upon the Commission to interpret its orders of convenience and necessity or the Act, though. Thus, we find that the Commission did not have primary jurisdiction to decide the issues in this case.

■ Appellant also cites Section 17(e) and its provisions to support its position that the Commission has exclusive subject matter jurisdiction of these issues. Section 17(e) provides:

> "The commission shall have exclusive original jurisdiction over electric, water, and sewer utility rates, operations, and services not within the incorporated limits of a municipality exercising exclusive original jurisdiction over those rates, op-

---

4. Sec. 16. "The commission has the general power to regulate and supervise the business of every *public utility* within its jurisdiction and to do all things, whether specifically designated in this Act or implied herein, necessary and convenient to the exercise of this power and jurisdiction. The commission shall make and enforce rules reasonably required in the exercise of its powers and jurisdiction, including rules governing practice and procedure before the commission. The commission *may* call and hold hearings, administer oaths, receive evidence at hearings, issue subpoenas to compel the attendance of witnesses and the production

of papers and documents, and make findings of fact and *decisions* with respect to *administering* the provisions of this Act or the rules, orders, or other actions of the commission." (Emphasis supplied).

5. Sec. 3(p). " 'Order' means the whole or a part of the final disposition, whether affirmative, negative, injunctive, or declaratory in form, of the regulatory authority in a matter other than rulemaking, but including issuance of certificates of convenience and necessity and ratesetting."

erations, and services as provided in this Act."

Section 17(a) provides:

"Subject to the limitations imposed in this Act and for the *purpose of regulating rates, and services, so that such rates may be fair, just, and reasonable, and the services adequate and efficient,* the governing body of each municipality shall have exclusive original jurisdiction over all electric, water, and sewer utility rates, operations, and services provided by an electric, water, and sewer utility within the city or town limits." (Emphasis supplied).

It is not absolutely clear what is meant by exclusive original jurisdiction over electric rates, operations and services, but, since Section 16 speaks to the Commission in its judicial capacity it would seem to follow that Sections 17(a) and (e) would speak to the Commission's jurisdiction in its legislative capacity, e. g., ratesetting. See *State v. Southwestern Bell Tel. Co.,* 526 S.W.2d 526 (Tex.Sup.1975), *Schenker v. City of San Antonio,* 369 S.W.2d 626 (Tex.Civ.App.— San Antonio 1963, writ ref'd n. r. e.). This construction is supported by the language in Section 17(a) which indicates that the provisions of Section 17 are concerned with the legislative function of regulating rather than the judicial function of interpretation and decision. Furthermore, if the "exclusive original jurisdiction" language referred to a judicial function an unintended result would evolve. For example, if a municipal utility were impinging upon an area certificated to a "public utility" inside the boundaries of a municipality, Section 17(a) (given a construction of judicial authorization) would appear to give the municipality itself the judicial power to decide the dispute between its municipal power company and the impinged upon public utility. Obviously, this was not intended. Therefore, we find that Section 17(e) does not confer on the Commission exclusive jurisdiction to decide disputes between a municipal utility and another utility.

Appellant also argues that the Commission possesses exclusive jurisdiction to temporarily enjoin municipal utilities from violating the provisions of Section 50(2). We have thoroughly reviewed all of the enforcement provisions of the PURA and have found no provision which indicates an intention to give the Commission exclusive enforcement powers over certification violations of municipal utilities under Section 50(2). Indeed, we find an absence of provisions which give the Commission any temporary injunctive power concerning the activities of municipal utilities (retail public utilities) under Section 50(2). See Sections 60, 71, and 83. Compare *Pleitz and Little,* Municipalities and the Public Utility Regulatory Act, 28 Baylor L.Rev. 977, 978, 1125– 1126 (1976). Thus, the trial court possessed at least concurrent jurisdiction with the Commission to hear the issues in this case. Appellant's points 1 and 4 are overruled.

Appellant's points 5 and 6 contend that appellees did not show a probable right and a probable injury in this case. Appellate review of an order granting or denying a temporary injunction is strictly limited to determination of whether there has been a clear abuse of discretion by the trial court in granting or denying the interlocutory order. *Davis v. Huey,* supra 571 S.W.2d at 862. As to the right, we have already discussed the fact that the appellees possessed a justiciable interest in this case. As to a probable injury, we note that there was extended testimony by Lee Gandy, manager of MVEC, that any damages from encroaching on MVEC territory could not be ascertained with certainty. Therefore, we find no abuse of discretion. *Missouri Pacific Truck Lines, Inc. v. Brown Express, Inc.,* 399 S.W.2d 430, 432 (Tex.Civ.App.— Fort Worth 1966, writ ref'd n. r. e.), 6 Lowe, Texas Practice, Remedies § 114 (2nd ed. 1973). Appellant's points 5 and 6 are overruled.

Appellant's point 7 contends that the temporary injunction was an abuse of discretion in that the injunction did not properly preserve the status quo. The status quo is defined as the " 'last, actual, peaceable, non-contested status which preceded the pending controversy.' " *Janus*

*Films, Inc. v. City of Fort Worth,* 163 Tex. 616, 358 S.W.2d 589 (Tex.Sup.1962). Where the acts to be enjoined are prima facie violations of law, the status quo could never be a condition of affairs allowing the respondent to continue the violation. *Rattikin Title Company v. Grievance Committee,* 272 S.W.2d 948, 955 (Tex.Civ.App.—Fort Worth 1954, no writ). Compare *Janus Films, Inc. v. City of Fort Worth, supra.* We find the trial court's ordering that the PUB could not use the power poles it had already put in place was not an abuse of discretion. Appellant's point 7 is overruled.

The judgment of the trial court is affirmed.