# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

===============
## NO. 03-00-00113-CV
===============

**Lamb County Electric Cooperative, Inc., Appellant**

**v.**

**Public Utility Commission of Texas; Bailey County Electric Cooperative Association; Mobil Exploration & Producing U.S., Inc.; Southwestern Public Service Company; Texaco Exploration and Production, Inc., Appellees**

=================================================================
**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT NO. 99-03368, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING**
=================================================================

Lamb County Electrical Cooperative, Inc. (the "Cooperative") sued the Public Utility Commission (the "Commission") to set aside a final order issued by the Commission in a contested case. Southwestern Public Service Company ("SPS"), a prevailing party in the contested case, intervened in the lawsuit in defense of the Commission's order. The Cooperative appeals now from a trial-court judgment affirming the order. We will reverse the judgment and the order and remand the cause to the Commission.

The controversy has a rather complex procedural element that we will summarize as briefly as possible. The Public Utility Regulatory Act of 1975 established a new regulatory regime for public utilities. The newly constituted Commission began licensing retail public utilities as exclusive providers of electric power in designated geographical areas ("service areas"). The monopoly right to provide such power was evidenced by the Commission's

certificates of convenience and necessity issued to the utilities. The monopoly right was and is protected by statutes prohibiting a utility's interference with another public utility's operations within its service area. *See generally* Public Utility Regulatory Act ("PURA"), 75th Leg., R.S., ch. 166, § 1, Tex. Gen. Laws, 713, 786, 787, 789 (Tex. Rev. Civ. Stat. Ann. art. 1446c, §§ 50, 53*, 60 since repealed and codified at Tex. Util. Code Ann. § 37.051, .056, .156 (West 1998 & Supp. 2000)); *see also* Bradley J. Toben*, Certificates of Convenience and Necessity under the Texas Public Utility Regulatory Act*, 29 Baylor L. Rev. 115, 116 (1976).

**DOCKET 42**

In a 1976 proceeding before the Commission ("Docket 42"), the Cooperative and SPS obtained their respective certificates of convenience and necessity. Their designated service areas shared, to a large extent, a common boundary. Certain of SPS's distribution lines, erected before 1976, lay across the new boundary and served a number of oil wells situated in the Cooperative's assigned service area. The wells were combined in two production units, one operated by Texaco, Inc. ("Texaco") and the other by Amoco Production Company ("Amoco"). Anticipating such situations, the Commission had promulgated a rule that encompassed, within a utility's certificate of convenience and necessity, a 400-foot corridor through which a utility might lawfully continue its pre-1976 service over existing lines, even within another utility's service area. In Docket 42, however, SPS was expressly denied such a corridor in deference to a contract entered into by SPS and the Cooperative to adjust the situation on their own terms. *See* Tex. Rev. Civ. Stat. Ann. art. 1446c, § 56 (since repealed) now codified at Tex. Util. Code

2

Ann. § 37.155 (West 2000). The Commission approved and incorporated the contract in its final order in Docket 42, providing as follows in the agency's Conclusion of Law Number Seven:

> If any distribution lines of Southwestern Public Service Co. . . are located outside the service area boundaries as shown on Staff Exhibits 1 through 15, pursuant to agreement by the parties, [SPS is] granted a Certificate of Convenience and Necessity *for the facility itself only insofar as such facility is utilized to serve customers presently being served.* [SPS] is not granted a Certificate of Convenience and Necessity for a 400-foot corridor as provided by the Commission Rule .056(b)(b)(B).

(Emphasis added.) We will refer to this determination hereafter as "Conclusion of Law Number Seven." The parties' disagreement about the meaning and effect of Conclusion of Law Number Seven lies at the center of the present litigation.

**DOCKET 2991**

On December 27, 1979, the Cooperative initiated Commission Docket 2991, requesting a cease-and-desist order requiring SPS to terminate its electric service to "consuming facilities" within the Cooperative's service area. The Cooperative alleged that SPS had expanded service over its distribution lines to Texaco and Amoco in violation of Conclusion of Law Number Seven. The alleged violation consisted of SPS's providing additional electric power over new lines built by Texaco and Amoco to serve "thirty or more *new* oil field loads" owned by Amoco and "six *new* loads" owned by Texaco in another unitized field. (Emphasis added.)

In a final order issued January 8, 1981, the Commission did not expressly rely upon, reject, distinguish, or assign meaning to Conclusion of Law Number Seven, the basis for

3

the Cooperative's allegation that the additional "loads" over and above the 1976 "loads" were a violation of the final order in Docket 42 and Conclusion of Law Number Seven. Instead, the Commission simply refused the Cooperative's request for a cease-and-desist order on the single ground that the public interest dictated that SPS be allowed to continue service over Amoco's and Texaco's newly constructed lines. The rationale for this conclusion was as follows: (1) customer-owned distribution lines were an established practice in developing oil fields and necessary for their proper development in various respects; and (2) Amoco's and Texaco's lines were "energized" from SPS's distribution lines at points within the areas "grandfathered" to SPS in Conclusion of Law Number Seven.

### DOCKET 14454

On July 24, 1995, the Cooperative initiated Commission Docket 14454, the contested case now before us. The Cooperative requested a cease-and-desist order prohibiting SPS's supplying power within the Cooperative's service area by means which the Cooperative alleged were unlawful and in violation of Conclusion of Law Number Seven. The Cooperative's petition alleged the following particulars regarding SPS's conduct:

1. SPS was using its "grandfathered" distribution lines to supply electric power to (a) new facilities, (b) new facilities of new customers via pre-1976 customer facilities, and (c) pre-1976 customers who had acquired additional facilities from other SPS customers; moreover, SPS had expanded, upgraded, and now utilized differently its "grandfathered" distribution lines.

4

2. SPS was supplying new facilities unlawfully over customer-owned lines built to connect with SPS power at points within the SPS service area or points along its "grandfathered" distribution lines.

3. SPS had constructed new distribution facilities across the shared boundary to connect with consuming facilities within the Cooperative's service area.

4. SPS was unlawfully providing power to former Cooperative customers who had discontinued Cooperative service

5. SPS was metering within its service area power supplied by SPS to "individual consuming facilities" that were unlawfully "submetered" in the Cooperative's service area.

Some of the foregoing allegations appear perhaps to overlap; we have summarized the allegations as best we can. The contested case was terminated by the Commission's summary decision in Docket 14454 before the allegations were fully developed.

In the course of Docket 14454, the Commission thrice stated its opinion that Conclusion of Law Number Seven was "decidedly ambiguous" on the issue of whether it restricted SPS to serving its pre-1976 "customers" *and* "consuming facilities," or whether it authorized SPS to enlarge its service to include additional "consuming facilities" so long as power was supplied to those additional facilities through a pre-1976 "customer." In an order signed April 1, 1996, the Commission summarized the parties' "cogent, legal, equity, and policy arguments to support [their] differing interpretations of" Conclusion of Law Number Seven. In its order, the Commission expressly declined to decide upon a correct interpretation. The Commission explained that such a decision would be unnecessary if SPS applied for "dual

5

certification" authorizing it to serve the disputed additional facilities. The Commission abated Docket 14454 to allow SPS to seek such dual certification. SPS began a proceeding of that character. It was never consummated, however, and the Commission resumed its consideration of the dispute in Docket 14454.

SPS moved for "summary disposition" of the Cooperative's petition for a cease-and-desist order under a Commission rule that authorized granting such motions when there was no genuine issue as to any material fact and the moving party is entitled to a decision in its favor, as a matter of law, on "issues" expressly set forth in the motion.[1] The Commission granted the SPS motion.

If we understand correctly SPS's motion for summary disposition, it sets forth two "issues" or grounds that allegedly controlled the litigation in Docket 14454 and entitled SPS to a decision in its favor as a matter of law. The grounds were as follows:

1. In two preliminary orders in Docket 14454, the Commission "held" correctly that SPS's disputed service was lawful. This is incorrect. Each of the two preliminary orders merely stated the Commission's view of why a decision on the lawfulness of SPS's service was unnecessary; and, the two orders expressly left that issue open for argument and a proposed decision after a hearing before the administrative-law judge. *See* the Commission's "Preliminary Order" and "Supplemental Preliminary Order" signed respectively on October 17, 1996, and April 24, 1998. Accordingly, we need not refer further to this contention.

---

[1] *See* 16 Tex. Admin. Code § 22.182.

6

2. The Commission's 1981 decision in Docket 2991, involving the Cooperative's request for a cease-and-desist order, was res judicata of all claims and issues in Docket 14454.[2] We will discuss this ground below.

Because the case was decided summarily by the administrative-law judge, as a matter of law, the Cooperative was denied an opportunity to introduce evidence it contended was material. The administrative-law judge, in his proposal for decision, summarized as follows the excluded evidence the Cooperative had offered to introduce in support of its claim that SPS's conduct was unlawful and in violation of Conclusion of Law Number Seven:

> The details of the background facts surrounding the original certification proceedings in 1976, including a transcript of the Docket No. 42 proceeding.
>
> The original intent and meaning of the grandfather provisions of Docket No. 42. Documentary evidence would be offered as well as witness testimony by individuals who participated in formulating the agreement reached in that docket.
>
> Details of the more than 600 consuming facilities at issue in this proceeding.
>
> Details regarding the identity and location of the original SPS distribution lines coming within the 1976 grandfather provision.
>
> Changes in facility and utilization of the original grandfathered distribution lines, which had resulted in the conditions precedent to certification being lost, resulting in expiration of the original grandfathered certification as a matter of law.
>
> Details of each well by map location and meter identity that are consuming facilities being served with SPS energy [across the shared boundary] via customer-owned lines.

---

[2] Res judicata is a basis for summary disposition under the Commission's rules. *See* 16 Tex. Admin. Code § 22.181(a)(1)(c).

7

Detailed identity and map locations where SPS had openly constructed overhead lines across the [shared] boundary to serve an agricultural-related consuming facility in [Cooperative] territory.[3]

Details of map location and meter identity where SPS has interfered with [the Cooperative's] current operations and service by connecting a consuming facility to SPS service which was previously served by [the Cooperative in its service area].

Details of map location and meter identity of consuming facilities subject to sub-meter and/or deduct meter wherein SPS service is being charged to customers through sub-meters at the end of other customer-owned lines.

Evidence establishing [the Cooperative's] difficulty in discovering SPS's "massive encroachment" into [Cooperative] territory.

## THE COMMISSION'S FINAL ORDER IN DOCKET 14454

The only material fact finding in the Commission's final order is that the boundaries of the two production units have not changed since 1976, although the number of wells in each production unit have increased since that time. It appears undisputed that the number of wells served by SPS in the Cooperative's service area, at the time of the hearing, was about 600.

The final order grants SPS's motion for summary disposition and denies the Cooperative's petition for a cease-and-desist order based on the following conclusions of law:

---

[3] In his proposal for decision, the administrative-law judge noted that the Cooperative's petition contained "no apparent allegation regarding agricultural related consuming facilities." We observe that the Cooperative's allegations are quite general. It does not appear, however, that anything akin to a more definite statement was ever required by the Commission or that the Commission ever sustained something like a special exception levied against the Cooperative's petition.

8

1.  Commission Docket No. 42 authorized SPS to provide service to SPS's customers at the time of the issuance of the final order in 1976, that being the oil field operators Texaco and Amoco. The certification in this area otherwise singly certificated [sic] to [the Cooperative] was limited to the established geographical boundaries of each oil field operator's unit. Docket No. 42 authorizes SPS to expand its service to these existing customers within each unit.

2.  In Docket No. 2991, the Commission confirmed that, pursuant to Docket No. 42, SPS may lawfully serve Amoco and Texaco's new and future electric service needs in the area otherwise singly certificated [sic] to [the Cooperative].

2A. It is appropriate to resolve this issue in this docket as a matter of law, based on the interpretation of prior Commission orders, therefore, no evidentiary hearing is necessary.

The final order also adopts the proposal for decision filed by the administrative-law judge. The material parts of that document may be summarized as follows:

1.  Although the Cooperative maintains that SPS is encroaching on the Cooperative's service area in five particulars (grandfathered rights, customer-owned facilities, new construction, interference with Cooperative operations, and "submetering"), these allegations "are simply different aspects" of the Cooperative's contention that SPS's grandfathered service to the oil company operating units could not be extended to new wells in the two units.

2.  The main issues in considering the motion for summary disposition are: (a) how and by whom should Conclusion of Law Number Seven be interpreted; and (b) "what is the impact" in Docket 14454 of the Commission's decision in Docket 2991.

3. The Commission's Supplemental Preliminary Order in Docket 14454 properly interprets the meaning of the final orders in Dockets 42 and 2991 as a matter of law, and mandates denial of the Cooperative's petition for a cease-and-desist order because those earlier orders authorized "expansion to preexisting customers within the boundaries of their oil-field units."[4]

4. Conclusion of Law Number Seven in Docket 42 authorized SPS to expand its service to existing customers within each of the two production units.

5. In Docket 2991, the Commission "confirmed" that under Conclusion of Law Number Seven SPS might lawfully serve Amoco's and Texaco's "new and future electric-service needs in" the two production units.

We may fairly summarize all of the foregoing as follows: (a) the Commission interpreted Conclusion of Law Number Seven as authorizing the expansion of SPS's service within the two oil-production units so long as the expanded service is supplied to pre-1976 customers Texaco and Amoco for use within their respective oil-production units; and (b) this interpretation is arrived at from the text of Conclusion of Law Number Seven as "confirmed" by the Commission in its 1981 decision in Docket 2991.

---

[4] Items 1, 2, and 3 are patently conclusions of law although not separately stated nor named as such in the proposal for decision. They are instead buried in the administrative-law judge's "Discussion" of the case. They are, nevertheless, adopted by the Commission's final order and must be set forth herein as part of the Commission's basis for decision. *See* Tex. Gov't Code Ann. § 2001.141(a), (b) (West 2000).

**THE COOPERATIVE'S APPEAL**

In its second assignment of error, the Cooperative complains it was erroneously denied an evidentiary hearing as to the meaning and regulatory effect of Conclusion of Law Number Seven. We will sustain the point.

The Cooperative was denied the right to adduce evidence on several issues, including "[t]he details of the background facts surrounding the original certification proceedings in 1976, including the transcript of the Docket No. 42 proceeding," and including "[t]he original intent and meaning of the grandfather provisions of Docket No. 42." The Cooperative argues that PURA section 37.155 declares contracts such as that approved and incorporated in Conclusion of Law Number Seven to be "valid and enforceable" contracts. Consequently, Texas contract principles apply. *See Public Util. Bd. v. Central Power & Light Co.*, 587 S.W.2d 782, 787 (Tex. Civ. App.—Corpus Christi 1979, writ ref'd n.r.e.). And because the Commission itself thrice declared Conclusion of Law Number Seven to be "decidedly ambiguous," the correct meaning of Conclusion of Law Number Seven became an issue of fact provable by evidence.[5] *See Lenape Res. Corp. v. Tennessee Gas Pipeline Co.*, 925 S.W.2d 565,

---

[5] Section 2001.051 of the Administrative Procedure Act provides that in a contested case a party is entitled to an opportunity "to respond and to present evidence and argument on each issue involved in the case." Tex. Gov't Code Ann. § 2001.051(2) (West 2000). Section 2001.082, on the other hand, provides that "evidence that is irrelevant, immaterial, or unduly repetitious shall be excluded." *Id.* § 2001.082. Irrelevant evidence is evidence that does not tend to prove a fact of consequence to the determination of the action. *See id.* § 2001.081; Tex. R. Evid. 401. The Commission views any evidence regarding the formulation of Conclusion of Law Number Seven to be irrelevant for reasons discussed in the text. This includes any evidence pertaining to the contract approved and adopted in Conclusion of Law Number Seven.

11

574 (Tex. 1996); *Hyatt v. Radio Station WLOU*, 354 S.W.2d 415, 417 (Tex. Civ. App.—El Paso 1962, no writ).

The Commission replies as follows: the same rules apply to the construction of agency orders as apply to the interpretation of statutes, and an agency's interpretation of its own order is entitled to great weight because a presumption of validity attaches to an agency's exercise of its expertise.[6] *See Railroad Comm'n v. Home Transp. Co.*, 670 S.W.2d 319, 325 (Tex. App.—Austin 1984, no writ); *Amoco Prod. Co. v. Federal Power Comm'n*, 491 F.2d 916, 921 (10th Cir. 1973).

We are not certain of the Commission's intention underlying the foregoing argument. The matter of agency "expertise" does not appear to be involved in assigning meaning to the words of Conclusion of Law Number Seven; nor do any disputed facts appear to be involved that might require the exercise of agency "expertise." "[E]xpertness is not a magic wand which can be waved over the corpus of an agency's findings to preserve them from judicial review." Louis L. Jaffe, *Judicial Control of Administrative Action* 613 (1965). No brief has pointed out where or how such "expertise" might be applicable, nor does the record suggest anything in that regard.

What then of the rules of statutory construction as they may be applicable by analogy to the order of an administrative agency? The excluded evidence in the present case included a transcript of the proceedings in Docket 42 and "background facts" showing the

---

[6] The Commission has authority to interpret its own orders pursuant to its power to administer such orders. *See* Tex. Util. Code Ann. § 14.051(5) (West 2000).

12

context in which Conclusion of Law Number Seven was reached in that docket. Accepting the Commission's premise, one might apply the familiar rule of statutory construction requiring, when necessary, an examination of the circumstances surrounding passage of a statute (or in this case, issuance of the order containing Conclusion of Law Number Seven), as well as the historical background of the subject matter, the dispute, and the questions involved therein, all in an effort to arrive at an objective assessment of the enactor's intention. *See Calvert v. Fort Worth Nat'l Bank*, 356 S.W.2d 918, 921 (Tex. 1962); *Texas & N. O. R. Co. v. R. R. Comm'n*, 200 S.W.2d 626, 629 (Tex. 1947); *Wortham v. Walker*, 128 S.W.2d 1138, 1141 (Tex. 1939); *Cousins v. Sovereign Camp*, W.O.W., 35 S.W.2d 696, 697 (Tex. 1931). Such an inquiry is particularly apt in the case of an instrument that is patently or latently ambiguous or uncertain in its meaning for some other reason, such as a change of conditions. The Commission has never declared Conclusion of Law Number Seven to be *un*ambiguous.

We may also observe that an administrative agency should find such an inquiry to be in its own interest. Agreements of the kind underlying and incorporated in Conclusion of Law Number Seven should be encouraged rather than discouraged. One sure way to discourage them is to deny them their purported effect or to read into them something that was not within the parties' contemplation. *See Mitchell Energy Corp. v. Federal Power Comm'n*, 519 F.2d 36, 40-41 (5th Cir. 1975); Alfred C. Aman, Jr. & William T. Mayton, *Administrative Law* § 952 at 279, § 9.53 at 280-87 (1993).

The foregoing principles alone require a rejection of the Commission's argument as we understand it. We will, however, discuss the matter further in connection with SPS's reliance upon res judicata.

SPS contends the Commission correctly decided Docket 14454 summarily because the common-law doctrine of res judicata, arising from the Commission's final order in Docket 2991, barred the Cooperative's claim in Docket 14454 as a matter of law. *See Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 627-31 (Tex. 1992); *Al-Jazrawi v. Texas Bd. of Land Surveying*, 719 S.W.2d 670, 671 (Tex. App.—Austin 1986, writ ref'd). In support of its contention, SPS argues that the intended meaning of Conclusion of Law Number Seven was fairly litigated in Docket 2991, that the Commission decided in that docket the correct meaning of that conclusion as a matter of law, and that decision is conclusive in Docket 14454 with respect to the correct meaning of Conclusion of Law Number Seven.

The doctrine of res judicata is in principle applicable to certain administrative-agency adjudications but it may not be transferred to the regulatory sphere full-blown or free of considerations not found in the common-law doctrine. *See Restatement (Second) of Judgments*, § 83, at 263-72 (1982); *see, e.g., Al-Jazrawi*, 719 S.W.2d at 671; *Westheimer Indep. Sch. Dist. v. Brockette*, 567 S.W.2d 780, 787 (Tex. 1978). The doctrine cannot be viewed in isolation from the administrative process itself. Changing conditions or evolving views of what the public interest requires may render the doctrine inapplicable, even to the extent of allowing opposite results on the identical issue in successive adjudications involving the same parties. *See, e.g., Porter & Dietsch, Inc. v. FTC*, 605 F.2d 294, 299-300 (7th Cir. 1979); *Churchill Tabernacle v.*

14

*FCC*, 160 F.2d 244, 246 (D.C. Cir. 1947). We believe the case most instructive in the present dispute is *Magnolia Petroleum Co. v. New Process Prod. Co.*, 104 S.W.2d 1106 (Tex. 1937). There, the court dealt with the Railroad Commission's grant of a drilling permit after denying the permit three years previously, the disputing parties and the location of the proposed wells being the same. The court declared the agency's initial denial of a permit, after an adjudicative hearing in the agency, determined the pertinent private rights and public interest only *as of the date of the agency order and until such time as there occurred a change of conditions*. There, as here, no judicial review of the first agency order had intervened. *See Magnolia Petroleum Co.,* 104 S.W.2d at 1110-11.

The Cooperative was denied an opportunity to adduce evidence that it contended would show a material change of conditions since the Commission's 1981 decision in Docket 2991. As compared to the thirty-six or so wells that existed in 1981, the Cooperative wished to adduce in Docket 14454 evidence showing the "[d]etails of the more than 600" wells that had been completed as "consuming facilities" of electric power, and other evidence showing new construction and improvements, changes in the use of SPS's distribution lines, service to an agricultural facility, and acts by SPS amounting to unlawful interference with the Cooperative's operations. The Commission, by adopting the proposal for decision, disposed of any necessity for such proffered evidence by a conclusion of law that *all* allegations to which that evidence referred "are simply different aspects" of the Cooperative's contention that SPS's grandfathered service to the oil operators' units could not be extended to new wells. Why this is so is not apparent from the record as a matter of law; it appears rather to be simply a naked conclusion

15

of the administrative-law judge adopted by the Commission. Nothing in the record of Docket 14454 purports to explain this conclusion of law, by findings of fact, reasons, or otherwise. Was the Commission legally bound to state a basis for this conclusion of law? We believe it was.

The Cooperative's petition alleged facts that in general terms amounted to a significant change of conditions since 1976 and even since 1981. And the excluded evidence described in the proposal for decision appears to support at least some of these allegations.

It may be that the Cooperative's allegations *will* ultimately be shown to be merely "different aspects" of the Cooperative's contention that SPS's grandfathered service could not be extended to the new facilities. But that is not evident as a matter of law, as the Commission held in Docket 14454. And it may be that there has in fact been no *material* change in conditions since 1981, but this too is not shown in the record as a matter of law. And it may be that the thirty-six or so wells that were in dispute in 1981, in Docket 2991, were within the scope of Conclusion of Law Number Seven, but that does not necessarily mean as a matter of law that 600 wells were also within Conclusion of Law Number Seven, whether from the standpoint of the public interest or the contracting parties' understanding in Docket 42. We are not prepared to conclude that the Commission was wrong in any of these matters, but we do conclude that the record must show affirmatively that the Commission considered these factors which were essential to its reliance upon the doctrine of res judicata, given the change of conditions alleged by the Cooperative.

By failing to supply an explanation of these material matters, the Commission abused its discretion in summarily denying the Cooperative an opportunity for an evidentiary

16

hearing if res judicata was, indeed, the basis of the agency's decision.[7] *See Public Util. Comm'n v. Gulf States Util.* Co., 809 S.W.2d 201, 212 (Tex. 1991); *City of El Paso v. El Paso Elec. Co.*, 851 S.W.2d 896, 899-901 (Tex. App.—Austin 1993, writ denied). We need not address the Cooperative's remaining assignments of error.

Accordingly, we reverse the trial-court judgment and the Commission's final order in Docket 14454. We remand the cause to the Commission for proceedings not inconsistent with our opinion.

_____

John E. Powers, Justice

Before Justices Kidd, Yeakel and Powers[*]

Reversed and Remanded

Filed:   January 11, 2001

Do Not Publish

---

[7] The term "res judicata" does not appear in the proposal for decision nor in the Commission's final order adopting the proposal for decision. The record as a whole suggests, however, that res judicata is the only possible basis for the agency's summary disposition of the contested case.

\* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).